IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GINNIE MCKNIGHT, individually and on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED AIRLINES, INC., a Delaware corporation, and UNITED AIRLINES HOLDINGS, INC., a Delaware corporation,<br><br>        Defendants. | Case No. 23-cv-16118 |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441, and 1446, Defendants United Airlines, Inc. ("United") and United Airlines Holdings, Inc. ("UHC") remove this action from the Circuit Court of Cook County, Illinois, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division. Removal is proper because this Court has diversity jurisdiction and jurisdiction under the Class Action Fairness Act ("CAFA"). In support of this Notice of Removal, Defendants state as follows:

**I.    PROCEDURAL HISTORY**

1.    On October 17, 2023, Plaintiff Ginnie McKnight ("McKnight" or "Plaintiff") filed a class action complaint in the Circuit Court of Cook County, No. 2023-CH-08820, individually and on behalf of all others similarly situated, based on alleged violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513 *et seq*. ("GIPA"). United and UHC are the named defendants.

2.    An entity identified as "United Airlines Holdings" was served with a copy of the summons and Complaint on October 19, 2023. Pursuant to 28 U.S.C. § 1446(a), copies of all

process, pleadings, and orders that have been filed and served in the state court action are attached hereto as **Exhibit A**.

3. This Notice of Removal is timely under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days of the date that Defendants were served with the Complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

4. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Because this action was brought in the Circuit Court of Cook County, Illinois, venue for purposes of removal is proper in this Court. Pursuant to 28 U.S.C. § 93(a)(1), this District and this Division embrace Cook County, Illinois, the place where this removed action is pending.

5. Written notice of the filing of this Notice of Removal is being delivered to Plaintiff through her counsel of record. A copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of Cook County, Illinois.

6. Pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441, and 1446, and as explained further below, this Court has original jurisdiction over the instant action.

## II. ALLEGATIONS IN THE COMPLAINT

7. McKnight alleges that she submitted an employment application for the position of Ramp Service Employee with United[1] in or around May 2022. (Compl. ¶ 28.) McKnight further alleges that "[a]s part of the application and hiring process, and as a precondition of employment, Defendants required Plaintiff to submit to at least three physical examinations." (*Id*. ¶ 30.)

---

[1] Plaintiff alleges that she applied for positions with both United and UHC, but UHC is a holding company with no employees.

McKnight also alleges that "[d]uring the examinations, Defendants required Plaintiff to answer questions concerning her family medical history, *i.e.* the manifestation of diseases or disorders in her family members. Such questions included whether Plaintiff's family members had a history of high blood pressure, cancer, diabetes, heart disease, and other medical conditions." (*Id.* ¶ 31.)

8. According to McKnight, she was "not advised by Defendants or anyone else acting on behalf of Defendants, either verbally or in writing, to not disclose the solicited genetic information." (*Id.* ¶ 34.)

9. McKnight alleges that by requiring her to "answer questions about her family medical history, Defendants directly or indirectly solicited, requested, purchased and/or required Plaintiff to disclose her genetic information in violation of GIPA." (*Id.* ¶ 35.) McKnight alleges the same claims against Defendants on behalf of the putative class members. (*Id.* ¶¶ 39-42.)

10. Plaintiff asserts 56 counts in her Complaint alleging that Defendants violated GIPA because they "failed to advise Plaintiff and the other class members, either verbally or in writing, of their statutorily protected right under GIPA to not provide their family medical history or genetic information." (*Id.* ¶ 52.) Plaintiff alleges that, in turn, Plaintiff and the other Class members "have been aggrieved" by "violations of heir statutorily protected rights to privacy in their genetic information as set forth in GIPA." (*Id.* ¶ 53.) For these alleged violations of GIPA, Plaintiff seeks, both individually and on behalf of a putative class, $15,000 for "each" intentional and/or reckless violation and $2,500 for "each" negligent violation, as well as attorneys' fees and costs incurred in this litigation. (*Id.* ¶ 56, Prayer for Relief.) Plaintiff also seeks declaratory, injunctive, and equitable relief. (*Id.*)

11. Plaintiff seeks to represent a class of individuals and defines the proposed class as follows:

> All individuals who applied for employment with Defendants in Illinois and from whom Defendants, or an agent acting on behalf of Defendants, have requested and/or obtained family medical history or other genetic information according to Defendants' records within the applicable limitations period.

(*Id.* ¶ 36.)

## III. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

### A. Complete Diversity of Citizenship Exists Between Plaintiff and Defendants.

12. Removal is proper under 28 U.S.C. §§ 1332(a) and 1441 where there is complete diversity between a plaintiff and a defendant, and the amount in controversy exceeds $75,000. *See Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 458 (7th Cir. 2018) (diversity of citizenship jurisdiction "requires complete diversity between the parties").

13. For purposes of diversity jurisdiction, a corporation is a citizen of the state in which it is incorporated and where it has a principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

14. Complete diversity exists between the parties. As alleged in the Complaint, McKnight has "[at] all relevant times" been "a resident of the state of Maryland." (Compl. ¶ 13.)

15. Defendants are both headquartered and registered to do business in Illinois. (*Id.* ¶ 11-12; **Ex. B,** Declaration of D. Karpierz ¶ 3.) In turn, Defendants are citizens of Illinois.

16. Accordingly, there is complete diversity of citizenship between Plaintiff and Defendants. Neither are residents of the same state.

### B. The Amount in Controversy Exceeds $75,000.

17. The amount-in-controversy requirement also is satisfied. While Defendants deny liability as to McKnight's claims, the amount-in-controversy requirement is satisfied because, based on the allegations of the Complaint, McKnight is seeking damages in excess of $75,000,

4

exclusive of interest and costs. See 28 U.S.C. § 1332(a); 28 U.S.C. § 1446(c)(2); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"). Defendants' burden at this stage is "a pleading requirement, not a demand for proof." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008).

18. While Defendants deny liability as to McKnight's claims, the amount-in-controversy requirement is satisfied because, based on the allegations of the Complaint, McKnight seeks damages in excess of $75,000, exclusive of interest and costs. McKnight seeks an award of $15,000 in statutory damages for "each" intentional or reckless violation of GIPA, and $2,500 in statutory damages for "each" negligent violation of GIPA, in addition to attorneys' fees and costs incurred in this litigation. (Compl. ¶ 56; Prayer for Relief.) On the face of the Complaint, and without certainty as to how many violations each Plaintiff could be awarded under GIPA, it is reasonable to conclude that the amount in controversy is satisfied for purposes of removal.

19. McKnight alleges that Defendants "employ thousands of individuals in Illinois. . .where Plaintiff applied for a job with Defendants." (*Id*. ¶ 23.) If even five of the "thousands of individuals" are awarded damages for just one violation under GIPA, damages would meet or exceed $75,000.[2]

20. Furthermore, McKnight alleges that, as a "precondition of their employment with Defendants, Plaintiff and the Class were required to undergo physical exams, wherein Defendants required them to answer questions regarding their family medical history." (Compl. ¶ 48.) The

---

[2] This is an illustration and not a suggestion or admission that Plaintiff, or the putative class, are entitled to any relief whatsoever. 5 employees x $15,000 intentional or reckless violation of GIPA = $75,000

number of employees hired by Defendants in the past year that underwent vision, hearing and/or strength testing in the last year exceeds 1,000.[3] (*See* **Ex. B**, Declaration of D. Karpierz ¶ 7.)

## IV. REMOVAL UNDER CAFA

21. This putative class action is also subject to the Court's jurisdiction under CAFA, 28 U.S.C. § 1332(d), because minimal diversity exists and the amount in controversy exceeds $5,000,000.

22. CAFA was enacted "to facilitate adjudication of certain class actions in federal court." *Dart*, 574 U.S. at 89. Accordingly, CAFA expands jurisdiction for diversity class actions by creating federal subject-matter jurisdiction if: (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate. 28 U.S.C. § 1332(d); *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017).

23. "The language and structure of CAFA . . . indicate[ ] that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012) (quotation marks omitted).

24. The "party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties" and "the amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Roppo*, 849 F.3d at 579.

25. This case meets all the requirements for jurisdiction under CAFA and 28 U.S.C. § 1332(d)(2).

---

[3] Defendants deny that they violated GIPA in any way during the onboarding process.

### A. This matter is a "class action" under CAFA.

26. A "class action" for purposes of CAFA is defined as "any civil action filed in a district court of the United States under Rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Here, McKnight seeks to certify a class of all individuals in Illinois, "within the applicable limitations period," who applied for employment with Defendants and from whom was "requested and/or obtained genetic information, including family medical history or other genetic information." (Compl. ¶ 36.) Therefore, this action is properly considered a "class action" under CAFA.

### B. The requirement of minimal diversity is met.

27. The requirement of minimal diversity is also satisfied. CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A). Citizenship of the parties and jurisdiction are determined at the time of removal. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) (a "federal court's jurisdiction under CAFA is determined at the time of removal"); *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) (the "well-established general rule is that jurisdiction is determined at the time of removal"). As set forth above, McKnight is a citizen of a state (Maryland) that is different from the state of citizenship of Defendants (Illinois). (*supra*, ¶¶ 11-13.)

28. Thus, on information and belief, the class representative is diverse from Defendants, which at this stage of the proceedings is sufficient to satisfy minimum diversity. *See Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (noting that an allegation "even if only 'on information and belief,' that a specific member of the putative class had 'a particular state of

7

citizenship'" may be preliminarily accepted as a basis for subject matter jurisdiction); *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010). As a result, the parties are of diverse citizenship for purposes of 28 U.S.C. § 1332(d)(2)(A).

### C. The "amount in controversy" exceeds the CAFA threshold.

29. The "matter in controversy" aggregated across all the purported class members' claims satisfies CAFA. Under CAFA, "the matter in controversy" must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy in class actions, CAFA expressly requires that "the claims of the individual members shall be aggregated . . . ." 28 U.S.C. § 1332(d)(6).

30. Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(s) is intended to expand substantially federal jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

31. Defendants' burden to demonstrate the amount in controversy under CAFA is low and it need show only that there is "a reasonable probability that the stakes exceed" $5,000,000. *Brill*, 427 F.3d at 448. If the party opposing federal jurisdiction contests the amount in controversy, the proponent must "prove those jurisdictional facts by a preponderance of the evidence."

8

*Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006)).

32. The Seventh Circuit has acknowledged "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg*, 639 F.3d at 763. Accordingly, "[t]he party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448). This burden thus "'is a pleading requirement, not a demand for proof.'" *Id*. (quoting *Spivey*, 528 F.3d at 986). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, [citation omitted] the case belongs in federal court *unless* it is legally impossible for the plaintiff to recover that much." *Id*. at 764 (citing *Spivey*, 528 F.3d at 986; *Brill*, 427 F.3d at 448).

33. Additionally, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claim which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

34. Defendants deny the validity and merits of McKnight's alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that flow therefrom. However, for purposes of removal (and without conceding that McKnight or the

9

putative class are entitled to damages or penalties), the aggregated claims of the putative class establish, by a preponderance of evidence, that the amount in controversy exceeds the jurisdictional minimum of $5,000,000 as detailed below.

35. McKnight alleges that Defendants "employ thousands of individuals in Illinois." (*Id.* ¶ 23.) McKnight seeks for herself and for each putative Class Member $15,000 for "each" violation intentional and/or reckless violation of GIPA. (Compl. ¶ 56; Prayer for Relief.) Taking Plaintiff's allegations as true, and assuming at least one thousand employees within the proposed Class will be awarded $15,000 for a single reckless or intentional violation of GIPA, damages would total well more than $5 million.[4] Therefore, assuming that at least 1,0000 employees fall within the definition of the putative class, and that Defendants recklessly or intentionally violated GIPA (which Defendants vehemently deny), the 100 class member and over $5 million amount in controversy thresholds of CAFA are met.

## V. PLAINTIFF'S COMPLAINT ALLEGATIONS ESTABLISH ARTICLE III STANDING REQUIRED FOR FEDERAL COURT JURISDICTION.

36. "[A]s always, 'subject-matter jurisdiction is the first issue in any case.'" *Woods v. FleetPride, Inc.*, 2022 WL 900163, at *3 (N.D. Ill. Mar. 27, 2022) (quoting *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019)). If, after removal of a case from a state court, it "appears that the court lacks subject matter jurisdiction, the case shall be remanded." *Id.* (quoting 28 U.S.C. ¶ 1447(c)) (citations omitted). It is the party seeking removal that "bears the burden of establishing federal jurisdiction." *Id.* (quoting *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017)).

37. Article III of the Constitution requires an actual case or controversy between the parties. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994). Three requirements must

---

[4] 1,000 employees x $15,000 intentional or reckless violation of GIPA = $15M.

10

be met for Article III standing: "(1) plaintiff must have suffered an actual or imminent, concrete or particularized injury-in-fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) there must be a likelihood that the injury will be redressed by a favorable decision." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 621-22 (7th Cir. 2020), *as amended* (June 30, 2020) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)).

38. In *Spokeo v. Robins*, the Supreme Court explained that a "concrete" injury must actually exist but need not be tangible. 578 U.S. 330, 340-41 (2016). A legislature may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id*. (quoting *Lujan*, 504 U.S. at 578). But "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *Id*. "Instead, the plaintiff must show that the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (quoting *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)).

39. Analogous to a GIPA claim is a claim under the similar Illinois Biometric Information Privacy Act ("BIPA," 740 ILCS 14/ *et seq*.), which prohibits a private entity from capturing or collecting an aggrieved person's biometric information or identifiers without first providing a publicly available retention schedule, a written notice, and obtaining written consent. *See id*. The Seventh Circuit analyzed whether a plaintiff bringing a BIPA claim has Article III standing when it decided *Bryant*. In *Bryant*, the court analyzed, among other claims, whether a concrete harm is inflicted under Section 15(b) of BIPA when a private entity fails to provide written notice or obtain written consent before capturing or collecting an aggrieved person's biometric information or identifiers. *See Bryant*, 958 F.3d at 619. The *Bryant* court analyzed the

11

*Spokeo* decision and focused on Justice Thomas's concurring opinion, which drew a useful distinction between two types of injuries. The first, he said, arises when a private plaintiff asserts a violation of her own rights; the second occurs when a private plaintiff seeks to vindicate public rights. *Id*. at 624. Applying Justice Thomas's rubric, the *Bryant* court concluded that plaintiff's 15(b) BIPA claim was a violation of her own rights, such that her claim had Article III standing. *See id.* ("[W]e have no trouble concluding that Bryant was asserting a violation of her own rights—her fingerprints, her private information—and that is enough to show an injury-in-fact without further tangible consequences.").

40. Similarly here, McKnight alleges that Defendants violated her rights by requiring her to disclose her own personal genetic information in violation of GIPA. (*See* Compl. ¶¶ 30-33.) Plaintiff further alleges that "Defendants' violations of GIPA. . . were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with GIPA." (*Id*. ¶ 55.) Additionally, Plaintiff alleges that neither she nor the other Class members were advised "either verbally or in writing, of their statutorily protected right under GIPA not to provide their family medical history or genetic information." (*Id*. ¶ 52.) In other words, Plaintiff alleges that Defendants did not provide information to Plaintiff sufficient for her to know that she could refuse to provide family medical history if asked—just as the plaintiffs in *Bryant* alleged substantive information was withheld from them, resulting in them allegedly providing biometric information without informed consent. *Bryant*, 958 F.3d at 626.

41. These allegations are nearly identical to the 15(b) claim made by *Bryant*. Therefore, consistent with the *Bryant* court's Article III decision on a 15(b) claim under BIPA, the allegations in Plaintiff's Complaint establish Article III standing.

42. The Seventh Circuit has similarly concluded that other intangible, yet concrete, purported invasions of privacy or unconsented conduct satisfies Article III standing. *See, e.g., Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) (holding that a claim under the Telephone Consumer Protection Act for unconsented text messages satisfies Article III standing); *Remijas v. Nieman Marcus Grp., LLC*, 794 F.3d 688, 692 (7th Cir. 2015) (holding that a data breach claim for the increased risk of fraudulent credit- or debit-card charges was not a mere "allegation[] of future injury, but instead were the type of 'certainly impending' future harm that the Supreme Court requires for standing."); *Santangelo v. Comcast Corp.*, 341 F. Supp. 3d 830, 835 (N.D. Ill. 2018) (consumer suffered an injury-in-fact that was fairly traceable to internet service prover's actions in pulling his credit score without consent, in violation of the Fair Credit Reporting Act.)).

43. Plaintiff's allegations also satisfy the second and third prongs for Article III standing under *Lujan* because any injury Plaintiff purportedly suffered was caused directly by Defendants' alleged failure to comply with GIPA, and the prospect of statutory damages shows that such an injury is redressable. *See, e.g., Bryant*, 958 F.3d at 621.

**VI. CONCLUSION**

44. Accordingly, the above facts and the relevant allegations in Plaintiff's Complaint establish that the parties are diverse, the amount in controversy exceeds $75,000, and that the U.S. District Court for the Northern District of Illinois has subject matter jurisdiction over this matter. Defendants' invocation of diversity jurisdiction is therefore proper, as required by 28 U.S.C. § 1332(a). Removal is also proper under CAFA because, while liability is denied, the class exceeds 100 individuals and the $5 million amount in controversy threshold is met.

45. Should Plaintiff seek to remand this case to state court, Defendants respectfully ask that they be permitted to brief and argue the issue of this removal prior to any order remanding

this case. In the event the Court decides remand is proper, Defendants ask that the Court retain jurisdiction and allow Defendants to file a motion asking this Court to certify any remand order for interlocutory review by the Seventh Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b).

WHEREFORE, Defendants United Airlines and United Airlines Holdings notify this Court, Plaintiff, and the Circuit Court of Cook County, Illinois, that this action has been removed to the United States District Court, Northern District of Illinois. Defendants further request that this Court accept this Notice of Removal and assume jurisdiction over this matter for all further proceedings.

DATED: November 20, 2023    Respectfully submitted,

By: */s/ Ada W. Dolph*
One of Their Attorneys

Ada W. Dolph
adolph@seyfarth.com
Danielle Kays
dkays@seyfarth.com
Ala Salameh
asalameh@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

14

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail address denoted on the electronic Mail Notice List.

I also certify, pursuant to 28 U.S.C. § 1446(d), Federal Rules of Civil Procedure 5(b), and Local Rule 5.5, that a copy of the foregoing was sent via electronic mail to the adverse party in this matter at:

>Timothy P. Kingsbury
>Andrew T. Heldut
>Joseph Dunklin
>MCGUIRE LAW, P.C.
>55 W. Wacker Drive, 9th Fl.
>Chicago, IL 60601
>(312) 893-7002
>tkingsbury@mcgpc.com
>aheldut@mcgpc.com
>jdunklin@mcgpc.com

*/s/ Ada W. Dolph*

306045228v.2