**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GINNIE MCKNIGHT, JACQUELINE GARRISON, and ADRIANA DE LEÓN, individually and on behalf of all similarly situated individuals,<br><br>       Plaintiffs,<br><br>       v.<br><br>UNITED AIRLINES, INC. and UNITED AIRLINES HOLDINGS, INC.,<br><br>       Defendants. | Case No. 1:23-cv-16118<br><br>Honorable Judge Sharon Johnson Coleman<br><br>Magistrate Judge Jeffrey T. Gilbert |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

DATED: February 9, 2024

By:  *s/Ada W. Dolph*

Ada W. Dolph
Danielle M. Kays
Ala Salameh
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
(p) 312-460-5000
(f) 312-460-7000

*Attorneys for United Airlines, Inc. and United Airlines Holdings, Inc.*

## TABLE OF CONTENTS

**Page**

PAGE

INTRODUCTION .......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

A.    The Illinois Genetic Information Privacy Act (GIPA) ............................... 2

B.    Plaintiff McKnight's Allegations ................................................................ 4

C.    Plaintiff Garrison's Allegations ................................................................. 4

D.    Plaintiff De León's Allegations ................................................................. 5

E.    Allegations By The Proposed Class ............................................................ 5

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ................................................................................................................. 7

I.     GENERIC FAMILY MEDICAL HISTORY DOES NOT CONSTITUTE GENETIC
       INFORMATION PROTECTED BY GIPA ....................................................... 7

II.    FAMILY MEDICAL HISTORY WAS NOT SOLICITED OR REQUIRED AS A
       CONDITION OF EMPLOYMENT ................................................................ 9

III.   EVEN IF FAMILY MEDICAL HISTORY WAS PROFFERED, IT WAS NOT
       IMPROPERLY USED IN VIOLATION OF GIPA ....................................... 11

IV.    PLAINTIFFS' ALLEGED PRE-EMPLOYMENT MEDICAL EXAMINATIONS WERE
       LAWFUL AND APPROPRIATE ................................................................ 13

V.     PLAINTIFF MCKNIGHT'S CLAIMS ARE NOT EXTRATERRITORIALLY
       PROTECTED BY GIPA ............................................................................... 15

VI.    PLAINTIFFS INSUFFICIENTLY PLED INTENTIONAL OR RECKLESS
       VIOLATION OF GIPA ................................................................................ 17

CONCLUSION ............................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. AIG Ins. Co.*,
  Case No. 2023 CH 9246 (Ill. Cir. Ct. Nov. 3, 2023) ..................................................1

*Arnold v. Southwest Airlines Co.*,
  Case No. 2023 CH 9790 (Ill. Cir. Ct. Dec. 1, 2023) ..................................................1

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill.2d 100, 835 N.E.2d 801 (2005) ..................................................15

*Baum v. Dunmire Prop. Mgmt., Inc.*,
  No. 21-cv-00964, 2022 WL 889097 (D. Colo. Mar. 25, 2022) ..................................................8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007*)*..................................................6, 7

*Bridges v. Blackstone Grp., Inc.*,
  No. 21-CV-1091-DWD, 2022 WL 2643968 (S.D. Ill. July 8, 2022), *aff'd sub
  nom. Bridges v. Blackstone, Inc.*, 66 F.4th 687 (7th Cir. 2023)..................................................13

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ..................................................6

*Chicago Reg'l Council of Carpenters v. Berglund Constr. Co.*,
  No. 12 C 3604, 2013 WL 6693547 (N.D. Ill. Dec. 19, 2013) ..................................................14

*Conner-Goodgame v. Wells Fargo Bank*,
  No. 2:12-CV-03426, 2013 WL 5428448 (N.D. Ala. 2013)..................................................9

*Crichton v. Golden Rule Ins. Co.*,
  576 F.3d 392 (7th Cir. 2009) ..................................................15

*Duignan v. City of Chicago*,
  275 F. Supp. 3d 933 (N.D. Ill. 2017) ..................................................9

*EEOC v. Concentra Health Servs., Inc.*,
  496 F.3d 773 (7th Cir. 2007) ..................................................6

*Erdelt v. U.S.*,
  715 F.Supp. 278 (D.N.D. 1989)..................................................10

*Garrard v. Rust-Oleum Corp.*,
  575 F. Supp. 3d 995 (N.D. Ill. 2021) ..................................................16

ii

*Green v. Whataburger Rests. LLC*,
  No. 5:17-cv-243, 2018 WL 6252532 (W.D. Tex. Feb. 22, 2018) ...........................................7

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ........................................................................6

*Jauquet v. Green Bay Area Cath. Educ., Inc.*,
  996 F.3d 802 (7th Cir. 2021) ...................................................................................6

*Johnson v. Pacific Life Ins. Co.*,
  Case No. 2023 CH 9247 (Ill. Cir. Ct. Nov. 3, 2023) ...............................................1

*King v. Smithfield Food*,
  No. 2:08CV487, 2009 WL 10688336 (E.D. Va. Sept. 23, 2009), aff'd, 352 F.
  App'x 858 (4th Cir. 2009) ................................................................................13, 14

*Koziol v. Befesa Zinc US Inc.*,
  Case No. 2023 CH 10106 (Ill. Cir. Ct. Dec. 18, 2023) ...........................................1

*Kukovec v. Estée Lauder Co., Inc.*,
  No. 22-cv-1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) .........................17, 18

*Kurt v. Platinum Supplemental Ins., Inc.*,
  No. 19 C 4520, 2021 WL 3109667 (N.D. Ill. July 22, 2021) ..................................15

*Mazera v. Varsity Ford Mgmt. Servs., LLC*,
  565 F.3d 997 (6th Cir. 2009) ..................................................................................10

*Munnerlyn v. Installed Bldg. Prod., LLC, et al.*,
  No. 1:20-CV-225, 2020 WL 2528547 (W.D. Tex. May 18, 2020) ...........................8

*Namuwonge v. Kronos, Inc.*,
  418 F. Supp. 3d 279 (N.D. Ill. 2019) ......................................................................17

*Ortiz v. City of San Antonio Fire Dep't*,
  806 F.3d 822 (5th Cir. 2015) .............................................................................10, 11

*Petropoulos v. City of Chicago*,
  448 F. Supp. 3d 835 (N.D. Ill. 2020) ........................................................................6

*Piecuch v. Delta Air Lines Inc.*,
  Case No. 23 CH 9788 (Ill. Cir. Ct. Dec. 1, 2023) ...................................................1

*Poore v. Peterbilt of Bristol, L.L.C.*,
  852 F. Supp. 2d 727 (W.D. Va. 2012) ......................................................................8

*Post v. Comm'r of Internal Revenue*,
  No. 15355-17S, 2021 WL 1911699 (T.C. May 12, 2021) ........................................10

*Robinson v. DeVry Educ. Grp., Inc.*,
  No. 16 CV 7447, 2018 WL 828050 (N.D. Ill. Feb. 12, 2018)..........................................15, 16

*Rogers v. CSX Intermodal Terminals, Inc.*,
  409 F. Supp. 3d 612 (N.D. Ill. 2019) ...................................................................................17

*Sisco v. Morton Bldg., Inc.*,
  No. 2:19-CV-02787-HLT, 2022 WL 266809 (D. Kan. Jan. 28, 2022), *appeal
  dismissed*, No. 22-3038, 2022 WL 3646027 (10th Cir. Aug. 17, 2022)................................14

*Tovar v. United Airlines, Inc.*,
  985 F. Supp. 2d 862 (N.D. Ill. 2013) .............................................................................12, 13

*Vance v. Microsoft Corp.*,
  525 F. Supp. 3d 1287 (W.D. Wash. 2021)..............................................................................15

*Wice v. Gen. Motors Corp.*,
  No. 07-10662, 2008 WL 5235996 (E.D. Mich. Dec. 15, 2008) ............................................14

*Wooley v. Bridgeview Bank Mortg. Co., LLC*,
  No. 14 C 5757, 2015 WL 327357 (N.D. Ill. Jan. 23, 2015) ..................................................16

**Statutes**

410 ILCS 513/10..............................................................................................................................3

410 ILCS 513/25(a) ............................................................................................................ *passim*

410 ILCS 513/40............................................................................................................................17

740 ILCS 14/20..............................................................................................................................17

Federal Aviation Act..........................................................................................................3, 14, 15

Genetic Information Nondiscrimination Act ......................................................................... *passim*

GIPA, 513/25(c)....................................................................................................................3, 9, 10

GIPA, 513/25(g) ...............................................................................................................................3

GIPA, 513/5(2) .................................................................................................................................2

Health Insurance Portability and Accountability Act ..........................................................2, 3, 11

Illinois Genetic Information Privacy Act............................................................................ *passim*

Illinois Minimum Wage Law..........................................................................................................16

**Other Authorities**

29 C.F.R. § 1635.8(b)(1)(i)(B) ............................................................................3

45 C.F.R. § 160.103 ................................................................................3, 11

Fed. R. Civ. P. 9(b) ....................................................................................17

Fed. R. Civ. P. 12 ....................................................................................1, 2, 6

## **INTRODUCTION**

Plaintiffs' First Amended Complaint fails to state facts to support viable claims under the Illinois Genetic Information Privacy Act, 410 ILCS 513/ et seq. ("GIPA") and should be dismissed with prejudice pursuant to Rule 12(b)(6).[1] Plaintiffs assert that Defendants United Airlines, Inc. and United Airlines Holdings, Inc. (jointly "United" or "Defendants") violated Section 25 of GIPA when they purportedly solicited Plaintiffs' family medical histories during pre-employment health examinations. However, Plaintiffs' allegations fall short as a matter of law.

First, Plaintiffs do not—and cannot—establish that Defendants solicited or that Plaintiffs provided information that constituted protected genetic information as defined under GIPA. An alleged request for an employee's "family medical history" is not a request for "genetic information." Critically, Plaintiffs allege only that they provided general family medical history, which is not protected by GIPA.

Second, even if, assuming arguendo, Plaintiffs proffered genetic information (which Defendants staunchly deny), Plaintiffs allege only "labels and conclusions" that their employment opportunities were conditioned on the provision of family medical history. This is insufficient to state a claim under GIPA.

---

[1] This lawsuit is but one of a recent campaign by Plaintiffs' counsel to pursue putative class actions under the Illinois Genetic Information Privacy Act (GIPA). In 2023 alone, Plaintiffs' counsel filed at least 18 cookie-cutter putative class action cases under GIPA, alleging that the employer violated GIPA by inquiring about an applicant's family medical history. See, e.g., *Koziol v. Befesa Zinc US Inc.*, Case No. 2023 CH 10106 (Ill. Cir. Ct. Dec. 18, 2023); *Arnold v. Southwest Airlines Co*., Case No. 2023 CH 9790 (Ill. Cir. Ct. Dec. 1, 2023); *Piecuch v. Delta Air Lines Inc.*, Case No. 23 CH 9788 (Ill. Cir. Ct. Dec. 1, 2023); *Johnson v. Pacific Life Ins. Co.*, Case No. 2023 CH 9247 (Ill. Cir. Ct. Nov. 3, 2023); *Anderson v. AIG Ins. Co.*, Case No. 2023 CH 9246 (Ill. Cir. Ct. Nov. 3, 2023).

Third, Defendants' alleged pre-employment examinations were lawful, appropriate, and necessary to determine Plaintiffs' fitness for their respective roles in compliance with various federal laws.

Fourth, Plaintiff McKnight's claims are not extraterritorially protected by GIPA, and do not substantially arise out of events that occurred in Illinois.

Finally, Plaintiffs' claims of reckless or intentional violations of GIPA should be dismissed because Plaintiffs offer only conclusory statements regarding Defendants' state of mind, which is the crux of a claim of a reckless and intentional violation.

In an attempt to evade these fatal flaws, Plaintiffs merely parrot the statute, offering sweeping conclusory statements regarding alleged violations by Defendants. This is insufficient. Accordingly, Plaintiffs fail to state a plausible claim for relief, and Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully move to dismiss Plaintiffs' Complaint in its entirety and with prejudice.

## BACKGROUND

### A.     The Illinois Genetic Information Privacy Act (GIPA)

GIPA was enacted in 1998 to protect individuals who "are deterred from seeking genetic testing because of fear that the result will be disclosed without consent in a manner not permitted by law or will be used in a discriminatory manner." GIPA, 513/5(2). Following the federal enactment of the Genetic Information Nondiscrimination Act ("GINA") in 2008, Illinois amended GIPA to specifically incorporate GINA. GIPA as amended provides that covered entities "shall treat genetic testing and genetic information in such a manner that is *consistent with the requirements of federal law, including . . . [GINA]* . . . ." GIPA, 513/25(a) (emphasis added). GIPA also defines "genetic information" to specifically incorporate "the meaning ascribed to it under HIPAA [the Health Insurance Portability and Accountability Act], as

specified under 45 C.F.R. 160.103." *Id.*, 513/10. HIPAA in turn defines "genetic information" as "information about: (i) the individual's genetic tests; (ii) the genetic tests of family members of the individual; (iii) *the manifestation of a disease or disorder in family members of such individual*; or (iv) any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual." 45 C.F.R. § 160.103.

GIPA limits the "[u]se[2] of genetic testing information by employers." GIPA states in relevant part that an employer shall not directly or indirectly:

> (1) solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, or administer a genetic test to a person or a family member of the person as a condition of employment, preemployment application, labor organization membership, or licensure; . . .

GIPA, 513/25(c).

GIPA allows employers to request "genetic information" to comply with federal safety laws such as OSHA, GIPA, 513/25(a), and importantly here, the Federal Aviation Act ("FAA").[3] Additionally, under GIPA, as in GINA, "inadvertently requesting family medical history by an employer . . . does not violate this [statute]." GIPA, 513/25(g).[4]

---

[2] Through reference to HIPAA, GIPA defines "use" as "with respect to individually identifiable health information, the sharing, employment, application, utilization, examination, or analysis of such information within an entity that maintains such information." 410 ILCS 513/10; 45 C.F.R. § 160.103.

[3] United did not request or collect genetic information, and furthermore, if Plaintiffs could assert viable GIPA claims (though they cannot), United would show in discovery that any medical examination was done solely for monitoring the safety of its employees and in compliance with OSHA and other federal laws (including the FAA), which is explicitly permitted by GIPA.

[4] GIPA expressly counsels that employers should treat genetic information "consistent with federal law," including GINA. 410 ILCS 513/25(a). GINA contains a safe harbor provision that "absolves employers from liability when an unlawful requirement or request for genetic information is inadvertent." 29 C.F.R. § 1635.8(b)(1)(i)(B) ("If a covered entity uses language such as the following, any receipt of genetic information . . . will be deemed inadvertent.").

B.      **Plaintiff McKnight's Allegations**[5]

Plaintiff McKnight is a "resident of Maryland." (Compl. ¶ 13.) McKnight alleges that in or around May 2022, she applied for a Ramp Service Employee position at United Airlines'[6] Dulles, Virginia location. (*Id*. ¶ 30.) As part of the hiring process and as a precondition of employment, McKnight alleges that Defendants required her to submit to three physical examinations.[7] (*Id*. ¶ 32.) During the examinations, McKnight asserts that "Defendants required [her] to answer questions concerning her family medical history, *i.e.* the manifestation of diseases or disorders in her family members . . . [including] whether Plaintiff McKnight's family members had a history of high blood pressure, cancer, diabetes, heart disease, and other medical conditions." (*Id*. ¶ 33.) McKnight alleges in response, she "disclosed her genetic information, including diseases and disorders with which her family members have been diagnosed." (*Id*. ¶ 34.) McKnight alleges she subsequently received "phone calls and messages from United Airlines recruiters located in Chicago, Illinois and was required to further disclose and verify her family medical history." (*Id*. ¶ 35.) After refusing to provide the requested detail, Plaintiff's conditional job offer was allegedly rescinded for "being 'non-responsive' to Defendants' inquiries." (*Id*. ¶ 36.)

C.      **Plaintiff Garrison's Allegations**

Plaintiff Garrison alleges that in or around June 2022, she applied for a Ramp Service Employee position with United Airlines at the airport located in Chicago, Illinois. (Compl. ¶ 40.) Garrison alleges that as part of the hiring process and as a precondition of employment,

---

[5] Defendants assume the factual allegations in Plaintiffs' Amended Complaint are true only for purposes of this Motion. By doing so, Defendants do not admit the truth of these facts or any legal conclusions set forth in Plaintiffs' Amended Complaint.

[6] Notably, United Airlines Holdings, Inc. is solely a holding company and did not employ or seek to employ any of the Plaintiffs or the class.

[7] Defendants have provided Plaintiffs with the documentation surrounding the examinations, each of which were indisputably performed in Maryland—not in Illinois.

Defendants required her to complete a physical examination. (*Id*. ¶ 42.) During the examination, Defendants allegedly "required Plaintiff Garrison to answer questions concerning her family medical history, *i.e.* the manifestation of diseases or disorders in her family members . . . [including] whether Plaintiff Garrison's family members had a history of cancer, heart disease, and other medical conditions." (*Id*. ¶ 43.) In response, Garrison allegedly "disclosed her genetic information, including diseases and disorders with which her family members have been diagnosed." (*Id*. ¶ 44.) Defendants then allegedly "used this genetic information and denied []Garrison employment." (*Id*. ¶ 45.)

## D.    Plaintiff De León's Allegations

Plaintiff De León alleges that in or around October 2021, she applied for a position in Operations at United Airlines' Chicago, Illinois location. (Compl. ¶ 49.) De León alleges that as part of the hiring process and as a precondition of employment, Defendants required her to complete a physical examination. (*Id*. ¶ 50.) During the examination, Defendants allegedly asked "questions concerning her family medical history, *i.e.* the manifestation of diseases or disorders in her family members." (*Id*.) In response, De León allegedly "disclosed her genetic information, including diseases and disorders with which her family members have been diagnosed." (*Id*. ¶ 51.) After her alleged disclosure, De León was hired for a position in Operations in Chicago. (*Id*. ¶ 49.)

## E.    Allegations By The Proposed Class

Plaintiffs McKnight, Garrison, and De León assert one count in the Complaint for violation of GIPA due to the alleged solicitation, request, or requirement to provide genetic information of a person or a family member as a condition of employment or pre-employment application. (*Id*. ¶¶ 63-75.) Plaintiffs assert the Complaint on behalf of a putative class and

subclass from whom defendants alleged requested family medical history. Plaintiffs define the class as all individuals who sought employment from Defendants throughout the country. Plaintiffs also include a subclass as to all individuals who were located in Illinois and sought employment from Defendants.

## **LEGAL STANDARD**

To survive a Rule 12 motion to dismiss, a complaint must satisfy two "hurdles." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims against them. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007*)*). Second, the plaintiffs must allege more than mere "labels and conclusions" or "formulaic recitations of the cause of action." *Twombly*, 550 U.S. at 555. Indeed, "plaintiffs who merely set forth the statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims . . . must do more." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). To survive a motion to dismiss, "complaints cannot merely parrot the statutory language of the claims that they are pleading; rather, they must provide some specific facts to ground those legal claims." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 964 (N.D. Ill. 2020). A court must determine whether the allegations, if true, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Concentra Health Servs.*, 496 F.3d at 773 (quoting *Twombly*, 550 U.S. at 545); *see also Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) ("At the motion to dismiss stage, plaintiffs must set forth 'adequate factual detail to lift their claims from mere speculative possibility to plausibility.'"); *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) ("Raw conclusions are not entitled to a presumption of truth.") (citations

omitted). "The plausibility standard is not akin to a 'probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Twombly*, 550 U.S. at 556.

## ARGUMENT

### I. Generic Family Medical History Does Not Constitute Genetic Information Protected By GIPA

Plaintiffs' Amended Complaint fails to allege facts to support that Plaintiffs disclosed "genetic information." GIPA expressly looks to GINA for its definition of "genetic information." *See* GIPA, 513/25(a). Under GINA, an applicant's voluntary disclosure of general family medical history (including diagnoses) is not genetic information. Rather, courts have consistently held that a plaintiff's conclusory statements vaguely equating family medical history to "genetic information" are insufficient to state a claim as a matter of law. For example, in *Green v. Whataburger Rests. LLC*, No. 5:17-cv-243, 2018 WL 6252532, at *1 (W.D. Tex. Feb. 22, 2018), the plaintiff alleged that she incurred discrimination and harassment based on her family medical information, and specifically the medical history of her daughter. The defendant moved to dismiss the complaint because the plaintiff had not alleged that she or a family member suffered from a genetic condition covered by GINA, nor was the information at issue protected genetic information. *Id.* at *2. The court agreed. The court reasoned that the plaintiff did not "put Defendant on notice as to what her or her daughter's 'medical history' or 'genetic information' might be . . . [and did] not allege plausible factual support that would allow the Court to infer that either her or her daughter's 'medical history' or 'genetic information'" were protected under GINA. *Id.* In short, in dismissing the plaintiff's GINA claim, the court held that conclusory statements regarding disclosure of the plaintiff's daughter's medical history involving cancer testing and diagnosis was not protected genetic information, and was insufficient to state a valid claim under GINA. *Id.*

Additional decisions defining genetic information under GINA underscore the deficiencies in Plaintiffs' claims. In *Baum v. Dunmire Prop. Mgmt., Inc.*, No. 21-cv-00964, 2022 WL 889097, at *7 (D. Colo. Mar. 25, 2022), for example, the plaintiff alleged her employer violated GINA by terminating her after the plaintiff disclosed "protected genetic information." *Id.* at *6. The defendant filed a motion to dismiss which was granted by the court. *Id.* at *7. The court reasoned that the plaintiff "failed to state a claim for relief" under GINA because she did not plausibly allege that her father's "illness [of COVID-19] was 'the manifestation of a disease or disorder in family members' as required by GINA." *Id.* To state a claim under GINA, the solicited or disclosed family medical condition "must have a genetic predisposition and the employer must have believed that the medical information at issue had a genetic basis." *Id.* "Holding otherwise could impose liability on employers merely for inquiring about the health . . . of an employee's family member, a scenario to which the relevant regulations expressly counsel against applying GINA." *Id.* The opinion in *Dunmire* demonstrates that, at a minimum, a plaintiff must allege facts demonstrating that the family medical information at issue is protected genetic information. *Id.*; *see also Poore v. Peterbilt of Bristol, L.L.C.*, 852 F. Supp. 2d 727, 729 (W.D. Va. 2012) (dismissing GINA claim where plaintiff's disclosure regarding his *wife's* diagnosis of multiple sclerosis did not constitute protected genetic information as it did not reflect the plaintiff's genetic predisposition to contract the illness).

Moreover, there is a material difference between "genetic information" and the vague family medical history alleged here. Courts have recognized that there is "a clear distinction" between medical conditions such as epilepsy, Huntington's Disease, multiple sclerosis, COVID-19, acquired immunodeficiency syndrome ("AIDS"), and genetic information unlawfully used by an employer. *See Munnerlyn v. Installed Bldg. Prod., LLC, et al.*, No. 1:20-CV-225, 2020 WL

2528547 (W.D. Tex. May 18, 2020) (holding that epilepsy does not qualify as genetic information under GINA); *Duignan v. City of Chicago*, 275 F. Supp. 3d 933 (N.D. Ill. 2017) (holding that Huntington's disease does not qualify as genetic information); *Conner-Goodgame v. Wells Fargo Bank*, No. 2:12-CV-03426, 2013 WL 5428448 (N.D. Ala. 2013) (holding that AIDS diagnosis does not qualify as genetic information).

Here, Plaintiffs fail to establish that the unidentified diagnoses they allegedly provided about their families constitute genetic information. Plaintiffs simply allege the *conclusion* that they "disclosed genetic information, including diseases and disorders with which [their] family members have been diagnosed." (Compl. ¶¶ 34, 44, 51.) Plaintiffs do not allege or conclude that Defendants believed their family members' medical histories had a genetic component, or otherwise reflected Plaintiffs' genetic predisposition to contract any disorder, disease, or condition. The legislatures' intent, and the courts' interpretations of "genetic information" require Plaintiffs to have disclosed more than general family medical history to plausibly allege a violation under GIPA. Instead, Plaintiffs' conclusory allegations establish that the information allegedly sought was *not* "genetic information" protected from disclosure in GIPA. Thus, Plaintiffs fail to state a claim as a matter of law.

## II.    Family Medical History Was Not Solicited or Required as a Condition of Employment

Plaintiffs' claims also fail because they allege in conclusory fashion without any supporting facts that their employment opportunities were conditioned on the provision of family medical history during the pre-employment examinations.

Section 25(c)(1) of GIPA provides that an employer shall not directly or indirectly:

**solicit, request, require** or purchase **genetic testing or genetic information** of a person or a family member of the person, or administer a genetic test to a person or a family member of the person **_as a condition of_** employment, **preemployment application,** labor organization membership, or licensure;

GIPA, 513/25(c)(1) (emphasis added). "As a condition of" means that without it, Plaintiffs could not begin working without providing genetic information. *See, e.g., Erdelt v. U.S.*, 715 F.Supp. 278, 281 (D.N.D. 1989) (finding that plaintiff was required to accept the lodging (residency) as a condition of employment); *Post v. Comm'r of Internal Revenue*, No. 15355-17S, 2021 WL 1911699, at *2 (T.C. May 12, 2021) ("As a condition of employment, petitioner was required to maintain legal insurance."); *Mazera v. Varsity Ford Mgmt. Servs.*, *LLC*, 565 F.3d 997, 1002-3 (6th Cir. 2009) (concluding that the arbitration provision was a requirement for employment).

Plaintiffs do not allege facts to support their conclusion that Defendants required them to disclose family medical history as conditions of their employment. Mere completion of a lawful pre-employment health screening does not mean employment was conditioned on the provision of protected genetic information therein. Requiring information or action "as a condition of employment" means that an individual's hire or employment hinges on it.

Interpreting and applying similar provisions of GINA, in *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 824 (5th Cir. 2015), the employer required participation in a wellness program as a condition of employment. Under the wellness program in *Ortiz*, each employee was required to complete a comprehensive "job-related medical evaluation" and ongoing health testing thereafter. *Id.* The plaintiff alleged that his employer violated GINA because he was required to provide medical history and genetic information as part of the mandatory wellness program. *Id.* at 826. The court dismissed the claims because the plaintiff improperly conflated the request for generic medical information with the required provision of genetic information. *Id.* Indeed, the plaintiff only offered conclusory statements that mandatory participation in the wellness program made the provision of protected genetic information a condition of employment, and no facts to support that conclusion. *Id.* The court held that Plaintiffs'

conclusory statements were insufficient to establish that the providing of genetic information was a condition of employment. *Id.*

Similarly here, Plaintiffs allege that their employment opportunities were conditioned on their completion of the pre-employment medical examinations. However, there are no facts to plausibly establish that their employment was actually conditioned on the provision of protected genetic information. Plaintiffs offer only conclusory statements that providing family medical history was a condition of employment *because* they were required to complete the pre-employment health screenings. Indeed, Plaintiffs allege that their physical examinations were "precondition[s] of employment." (Compl. ¶¶ 32, 42, 50.) However, the completion of a lawful pre-employment health screening cannot inherently be conflated with the unlawful solicitation of protected family medical information as a condition of employment. Accordingly, Plaintiffs' claims fail as a matter of law.

### III. Even if Family Medical History Was Proffered, It Was Not Improperly Used in Violation of GIPA

Plaintiffs' allegations, taken as true, do not reflect improper use of any proffered genetic information as defined by the statute.[8] In their Complaint, Plaintiffs allege that protected genetic information was misused during the hiring and decision-making process. (Compl. ¶¶ 1, 36, 45.) "Use" as defined by HIPAA encompasses "the sharing, employment, application, utilization, examination, or analysis" of "individually identifiable health information." 45 C.F.R. § 160.103.

Courts applying the same federal definitions and analogous protections under GINA conclude that a plaintiff does not plead "improper use" where 1) the complaint fails to draw a nexus between knowledge of the genetic information and employment decisions; and 2) the

---

[8] Again, Plaintiffs' GIPA claims are not viable because GIPA allows employers to request "genetic information" to comply with federal safety laws such as OSHA, GIPA, 513/25(a), and if necessary, Defendants will establish that was done here.

pleaded facts reflect employment decisions in favor of a plaintiff *despite* the provision of genetic information. For example, in *Tovar v. United Airlines, Inc.*, 985 F. Supp. 2d 862, 874–75 (N.D. Ill. 2013), the court outlined protections analogous to GIPA, noting that GINA makes it unlawful for an employer to *discriminate* against any employee with respect to the compensation, terms, conditions, or privileges of employment because of genetic information with respect to the employee. The court reiterated that genetic information under GINA included an individual's genetic tests, the genetic tests of family members, and the manifestation of a disease or disorder in family members of the individual. *Id.* The plaintiff in *Tovar* disclosed his mother's diabetes diagnosis to the employer. *Id.* Despite his disclosure, the plaintiff was given a leave of absence to visit his mother, and was granted the leave benefits he requested. *Id.* Ultimately, the plaintiff was terminated, yet there was no evidence that the employer's awareness of his mother's diabetes diagnosis informed the termination decision. *Id.* Throughout his claims, plaintiff failed to demonstrate that the genetic information was shared, utilized, applied, or analyzed by the company in the course of its decision-making. *Id.* Because the plaintiff received leave benefits after disclosing his mother's diabetes diagnosis, and because the plaintiff failed to show the employer used the diagnosis to inform its termination decision, the court held Plaintiff's claims failed to establish the company improperly used his genetic information as a matter of law. *Id.*

Similarly here, Plaintiffs 1) fail to draw a nexus between knowledge of the genetic information and Defendants' employment decisions; and 2) Plaintiffs allege that thousands of employees are hired *despite* the request or provision of genetic information. For example, Plaintiff De León alleges that Defendants hired her after and despite her alleged disclosure of "genetic information, including diseases and disorders with which her family members have been diagnosed." (*Id.* ¶ 51.) Indeed, Plaintiffs do not—and cannot—allege that employment was

12

precluded for members of the Class or Subclass they purport to represent. On the contrary, Plaintiffs allege that Defendants "employ thousands of individuals across the nation, including in Illinois" and do so through their hiring process which allegedly includes the "solicitation of information regarding the manifestation of diseases in family members of the prospective employee[s]." (Compl. ¶¶ 25-27.) In turn, Plaintiffs directly allege that despite the request and receipt of genetic information, thousands of individuals are hired and employed nationally by Defendants. Plaintiffs McKnight and Garrison offer nothing more than conclusions on being denied employment on the basis of their alleged disclosures. As was true in *Tovar*, there are no allegations or evidence to show that Defendants' alleged awareness of family medical information of McKnight or Garrison informed the employment decisions. Thus, Plaintiffs' own allegations defeat the requirement that Defendants improperly "used" the allegedly disclosed genetic information.

## IV.    Plaintiffs' Alleged Pre-Employment Medical Examinations were Lawful and Appropriate

Plaintiffs' pre-employment medical examinations, as alleged, were lawful and appropriately required by Defendants. The Illinois legislature designed GIPA "to prevent "employers[] from using genetic testing data as a means of discrimination for employment," while still affording employers the opportunity to make health inquiries necessary and relevant to an individual's ability to perform the essential functions of their job. *See Bridges v. Blackstone Grp., Inc.*, No. 21-CV-1091-DWD, 2022 WL 2643968, at *1 (S.D. Ill. July 8, 2022), *aff'd sub nom. Bridges v. Blackstone, Inc.*, 66 F.4th 687 (7th Cir. 2023). Importantly, courts interpreting GIPA have concluded that it affords employers discretion to make relevant and necessary medical inquiries to determine an individual's fitness to do the job. *E.g., King v. Smithfield Food,* No. 2:08CV487, 2009 WL 10688336, at *6 (E.D. Va. Sept. 23, 2009), aff'd, 352 F. App'x 858

(4th Cir. 2009) (concluding that an individual applying for employment at a food manufacturing facility was lawfully required to complete a physical examination and questionnaire as it was "necessary to ensure that an employee could safely perform the duties of their particular position without posing a threat of injury to himself or others"); *Wice v. Gen. Motors Corp.*, No. 07-10662, 2008 WL 5235996, at *4 (E.D. Mich. Dec. 15, 2008) (holding that the medical examination of manufacturing employees was lawful to ensure that no medical condition would interfere with the ability to do their jobs); *Chicago Reg'l Council of Carpenters v. Berglund Constr. Co.*, No. 12 C 3604, 2013 WL 6693547, at *3 (N.D. Ill. Dec. 19, 2013) (holding that employees, including carpenters, were lawfully required to complete a pre-employment medical examination "to determine whether candidates for those jobs were capable of performing them safely" and "as part of . . . efforts to maintain a safe workplace"); *Sisco v. Morton Bldg., Inc.*, No. 2:19-CV-02787-HLT, 2022 WL 266809, at *6 (D. Kan. Jan. 28, 2022), *appeal dismissed*, No. 22-3038, 2022 WL 3646027 (10th Cir. Aug. 17, 2022) (holding that a forklift operator and carpenter's employment was lawfully conditioned upon completion of the employer's physical examination and questionnaire regarding physical and mental conditions to ensure their ability to perform the essential job duties). This is especially true for employers required to comply with OSHA and federal regulations specific to airlines. That is why GIPA specifically notes that an employer may request genetic information to comply with federal law, including "OSHA" GIPA, 513/25(a), and, relevant here, the FAA.

Here, Defendants' alleged pre-employment medical screenings were not, in and of themselves, unlawful. Defendants have both the right and the obligation to ensure that individuals are physically able to perform the essential functions of the roles, that they can perform their duties without the threat of injury to themselves, and otherwise maintain safe work

environments for others. These considerations are particularly critical for Defendants that operate a major airline and are required to comply with the FAA. Plaintiffs do not—and cannot—allege that the physical examinations or general medical inquiries are unlawful or improper, and Plaintiff's allegations do not underlie a viable claim for relief under GIPA.

## V. Plaintiff McKnight's Claims are Not Extraterritorially Protected by GIPA

Plaintiff McKnight, *a Maryland resident*, who allegedly applied for a role with Defendants *in Virginia*, and allegedly incurred injury *in Maryland*, does not state a claim that arises under Illinois' GIPA statute. Illinois statutes do not have extraterritorial application absent clear, express provisions in the statute. *Kurt v. Platinum Supplemental Ins., Inc.*, No. 19 C 4520, 2021 WL 3109667, at *10 (N.D. Ill. July 22, 2021); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 835 N.E.2d 801, 852 (2005) (Illinois Supreme Court held "Illinois statute does not have an 'extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'"); *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1292 (W.D. Wash. 2021) ("BIPA does not have such an express provision and thus is not authorized to have extraterritorial effect.").

Absent express language for extraterritorial application of an Illinois statute, the statute applies only to disputed events that occurred "primarily and substantially in Illinois." *Robinson v. DeVry Educ. Grp., Inc.*, No. 16 CV 7447, 2018 WL 828050, at *4 (N.D. Ill. Feb. 12, 2018). At the motion to dismiss stage, determining whether the disputed events occurred primarily and substantially in Illinois is based on the facts alleged in the complaint "in which no single factor would be dispositive." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009). In the case of out-of-state plaintiffs, courts consider the plaintiff's place of residence, the work location for the individual's position, where the individual experienced injury, where the alleged

violation transpired, and the employer's headquarters or principal place of business. For example, in *Wooley v. Bridgeview Bank Mortg. Co., LLC*, No. 14 C 5757, 2015 WL 327357, at *3 (N.D. Ill. Jan. 23, 2015), the court held that the Illinois Minimum Wage Law did not have extraterritorial application. Because the plaintiffs resided, worked, and received compensation in Kansas or Missouri, any alleged injury by their Illinois employer would have been sustained in Kansas or Missouri by virtue of the plaintiffs' residences and work locations. *Id.* Neither the defendant's Illinois principal place of business and headquarters, nor the creation of relevant compensation policies in Illinois, nor an allegation that the employees' compensation "emanated from Illinois," gave rise to the application of Illinois statutes to out of state employees. *Id.* Because the "majority of the circumstances relating to the plaintiffs' [claims] . . . transpired outside of Illinois, the plaintiffs [had] no cognizable action" under the Illinois law. *Id.; see also Robinson*, 2018 WL 828050, at *4 (Illinois statute did not extraterritorially apply to out of state plaintiffs who remotely attended classes of an Illinois university, interacted with defendant's Illinois agents from their home states, and incurred injury outside Illinois by virtue of their residence and activity); *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1002–03 (N.D. Ill. 2021) (no extraterritorial application of Illinois statute to plaintiff who lived and transacted business in Missouri despite defendant's Illinois headquarters location).

Likewise, Plaintiff McKnight does not and cannot sufficiently plead extraterritorial application of GIPA to her claims. McKnight is a resident of Maryland, applied for a role with Defendants in Virginia, and allegedly received notice in Maryland regarding the revocation of her conditional offer for a Virginia-based role. As such, McKnight's alleged interactions with and injuries sustained from Defendants occurred primarily and substantially outside of Illinois. Further, McKnight alleges that she was required to submit to at least three different physical

examinations, but does not allege that the examinations occurred in Illinois, because they did not. All of the circumstances relating to McKnight's claims transpired outside of Illinois. (Compl. ¶¶ 30-39.) Therefore, McKnight has no cognizable action under GIPA.

## VI. Plaintiffs Insufficiently Pled Intentional or Reckless Violation of GIPA

Plaintiffs fail to allege facts showing that Defendants' purported conduct was intentional or reckless, as required to state a claim for statutory damages under GIPA. See 410 ILCS 513/40. Indeed, Plaintiffs allege no facts with regard to Defendants' state of mind with regard to its alleged violative conduct. The decision in *Kukovec v. Estée Lauder Co., Inc*., No. 22-cv-1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) is instructive on this very issue. The court in *Kukovec* analyzed whether the plaintiff adequately alleged damages under BIPA. *Id*. at *8. Like GIPA, BIPA also provides for statutory penalties for negligent violations, and heightened penalties for reckless or intentional violations, 740 ILCS 14/20, and requires fact to support the heightened statutory damages:

> "[P]laintiff hasn't adequately alleged recklessness or intent. States of mind can be alleged generally, Fed. R. Civ. P. 9(b), but "a plaintiff still must point to details sufficient to render [the] claim plausible." * * * The complaint lacks those details. Plaintiff doesn't mention defendant's state of mind until the very end of the complaint, where she requests statutory damages. And no other facts in the complaint point to recklessness or intent—e.g., knowledge of BIPA's requirements or statements about purposefully not complying with the law."

*Kukovec*, 2022 WL 16744196, at *8 (citation omitted). *See also Namuwonge v. Kronos, Inc*., 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing BIPA claims based on intentional and reckless conduct because plaintiff's "abstract statements regarding damages" were insufficient to establish that defendant "acted recklessly or intentionally."); *Rogers v. CSX Intermodal Terminals, Inc*., 409 F. Supp. 3d 612, 618 (N.D. Ill. 2019) (dismissing the plaintiff's claim for intentional and reckless conduct where the plaintiff alleged only that the defendant's violations

were knowing and willful without any further substantive allegations).

Plaintiffs here allege no facts from which this Court could infer Defendants' state of mind, and offer only conclusory statements regarding Defendants' conduct of "intentionally and/or recklessly captur[ing] . . . family medical history in violation of Illinois law." (Compl. ¶ 41.) Plaintiffs fail to buttress their legal conclusions with any facts regarding Defendants' state of mind. Consistent with the Court's decisions, Plaintiffs here simply parrot the statute, and fail to allege facts that demonstrate Defendants' "knowledge of [the statute]'s requirements or statements about purposefully not complying with the law." *Kukovec*, 2022 WL 16744196, at *8. Therefore, Plaintiffs' claim of intentional and reckless conduct should be dismissed.

## CONCLUSION

For these reasons, Defendants United Airlines, Inc. and United Airlines Holdings, Inc. respectfully request that the Court dismiss Plaintiffs' First Amended Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and grant such other relief as the Court deems appropriate.

DATED: February 9, 2024            Respectfully submitted,

United Airlines, Inc. and
United Airlines Holdings, Inc.


By:  s/ *Ada W. Dolph*
       One of Their Attorneys

Ada W. Dolph
adolph@seyfarth.com
Danielle M. Kays
dkays@seyfarth.com
Ala Salameh
asalameh@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:   (312) 460-5000
Facsimile:    (312) 460-7000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed with the Court's electronic case filing system (ECF) on February 9, 2024, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

_s/ Ada W. Dolph_____

307931751v.7

20