**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GINNIE MCKNIGHT, JACQUELINE GARRISON, and ADRIANA DE LEÓN, individually and on behalf of all similarly situated individuals, | ) ) ) ) ) | |
| | ) | Case No. 1:23-cv-16118 |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Hon. Sharon J. Coleman |
| | ) | |
| UNITED AIRLINES, INC., a Delaware corporation, and UNITED AIRLINES HOLDINGS, INC., a Delaware corporation, | ) ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Evan M. Meyers
Timothy P. Kingsbury
Andrew T. Heldut
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
tkingsbury@mcgpc.com
aheldut@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL ALLEGATIONS ...............................................................................3

III.  LEGAL STANDARD...........................................................................................4

IV.  ARGUMENT .......................................................................................................5

      A.     Family Medical History Constitutes Genetic Information Protected
             By GIPA ....................................................................................................5

      B.     Family Medical History Was Solicited At The Preemployment Stage .................10

      C.     Plaintiffs' Claims Are Not About "Misuse" or "Discrimination" of Their Genetic
             Information ..............................................................................................12

      D.     Defendants' Pre-Employment Procedures Requesting Family Medical History
             Were Unlawful .........................................................................................13

      E.     Plaintiff McKnight Sufficiently Alleges That Defendants' GIPA Violations
             Occurred In Illinois..................................................................................16

      F.     Plaintiffs Properly Allege That Defendants' GIPA Violations Were Reckless Or
             Intentional ...............................................................................................18

V.    CONCLUSION ...................................................................................................20

<u>**TABLE OF AUTHORITIES**</u>

**Cases**                                                                                              **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    216 Ill.2d 100, 835 N.E.2d 801 (2005)..................................................................16

*Baum v. Dunmire Prop. Mgmt., Inc.*,
    No. 21-cv-00964, 2022 WL 889097 (D. Colo. Mar. 25, 2022)...............................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007*)* .................................................................................................5

*Chicago Reg'l Council of Carpenters v. Berglund Constr. Co.*,
    No. 12 C 3604, 2013 WL 6693547 (N.D. Ill. Dec. 19, 2013) ...............................13

*Conner-Goodgame v. Wells Fargo Bank*,
    No. 2:12-cv-03426, 2013 WL 5428448 (N.D. Ala. Sept. 26, 2013) .......................9

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009)...................................................................................16

*Duignan v. City of Chicago*,
    275 F. Supp. 3d 933 (N.D. Ill. 2017).......................................................................9

*Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*,
    No. 2:17-cv-01649-MHH, 2022 WL 2959569 (N.D. Ala. July 26, 2022)..........7, 8

*EEOC v. Grisham Farm Products, Inc.*,
    191 F. Supp. 3d 994 (W.D. Mo. 2016) ................................................................7, 8

*Garrard v. Rust-Oleum Corp.*,
    575 F. Supp. 3d 995 (N.D. Ill. 2021).....................................................................18

*Gibson v. City of Chicago*,
    910 F.2d 1510, 1520 (7th Cir. 1990).........................................................................4

*Green v. Whataburger Rests. LLC*,
    No. 5:17-cv-243, 2018 WL 6252532 (W.D. Tex. Feb. 22, 2018).............................8

*Hanley v. Green Tree Serv.*,
    934 F. Supp. 2d 997, 980 (N.D. Ill. 2013) ...............................................................4

*Karling v. Samsara Inc.*,
    610 F. Supp. 3d 1094, 1100 (N.D. Ill. 2022) .........................................................15

*King v. Smithfield Food*,
    No. 2:08CV487, 2009 WL 10688336 (E.D. Va. Sept. 23, 2009) ........................................13

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.*,
    657 F.3d 496, 502 (7th Cir. 2011)..................................................................................7

*Lee v. City of Moraine Fire Dept.*,
    No. 3:13-cv-222, 2015 WL 9144407 (S.D. Ohio Mar. 3, 2015)..................................7, 8, 14

*Logan v. Ramirez*,
    No. 21-cv-0131, 2022 WL 523104 (N.D. Ill. Feb. 22, 2022) ................................................6

*Mahmood v. Berbix, Inc.*,
    No. 22-cv-2456, 2022 WL 3684636 (N.D. Ill. Aug. 25, 2022) ..............................16, 17, 19

*Munnerlyn v. Installed Bldg. Prod., LLC, et al.*,
    No. 1:20-cv-225, 2020 WL 2528547 (W.D. Tex. May 18, 2020)......................................8, 9

*Ortiz v. City of San Antonio Fire Dep't*,
    806 F.3d 822 (5th Cir. 2015) ........................................................................................11

*Patriotic Veterans, Inc. v. Indiana*,
    736 F.3d 1041, 1049 (7th Cir. 2013)............................................................................15

*Poore v. Peterbilt of Bristol, L.L.C.*,
    852 F. Supp. 2d 727 (W.D. Va. 2012).............................................................................9

*Robinson v. DeVry Educ. Grp., Inc.*,
    No. 16-cv-7447, 2018 WL 828050 (N.D. Ill. Feb. 12, 2018)............................................18

*Rogers v. BNSF Ry. Co.*,
    No. 19- cv-3083, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019)..........................................19

*Sisco v. Morton Bldg., Inc.*,
    No. 2:19-CV-02787-HLT, 2022 WL 266809 (D. Kan. Jan. 28, 2022) ...............................13

*Supreme Auto Transport v. Arcelor Mittal*,
    238 F. Supp. 3d 1032, 1036 (N.D. Ill. 2017) ...................................................................5

*Tovar v. United Airlines, Inc.*,
    985 F. Supp. 2d 862 (N.D. Ill. 2013)............................................................................12

*Wice v. Gen. Motors Corp.*,
    No. 07-10662, 2008 WL 5235996 (E.D. Mich. Dec. 15, 2008)...........................................13

*Wooley v. Bridgeview Bank Mortg. Co., LLC*,
    No. 14 C 5757, 2015 WL 327357 (N.D. Ill. Jan. 23, 2015) ..............................................17

*Wordlaw v. Enter. Leasing Co. of Chicago, LLC*,
    No. 20-cv-3200, 2020 WL 7490414 (N.D. Ill. Dec. 21, 2020) ............................................ 19

**Statutes**

410 ILCS 513/10 ..................................................................................................................5, 7

410 ILCS 513/25(a) ...................................................................................................................14

410 ILCS 513/25(c) ........................................................................................................... *passim*

410 ILCS 513/25(e) ............................................................................................................. 11, 12

410 ILCS 513/40 .......................................................................................................................18

Federal Aviation Act ....................................................................................................2, 14, 15, 16

Genetic Information Nondiscrimination Act (GINA) ........................................................... *passim*

Health Insurance Portability and Accountability Act ............................................................ 4, 12, 13

Illinois Genetic Information Privacy Act ............................................................................. *passim*

Illinois Biometric Information Privacy Act ......................................................................3, 15, 18, 19

Illinois Minimum Wage Law .....................................................................................................17

Occupational Safety and Health Act of 1970 .............................................................2, 14, 15, 16

# I.    INTRODUCTION

Defendants United Airlines, Inc. and United Airlines Holdings, Inc. (collectively, "Defendants") operate a major airline known as United Airlines and employ thousands of individuals across the nation, including in Illinois where Defendants are headquartered. Plaintiffs' First Amended Class Action Complaint ("Complaint" or "FAC", Dkt. No. 17) states claims under the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq.* ("GIPA"), on the basis that Defendants violated Plaintiffs' rights by improperly soliciting or requesting their genetic information at the pre-employment stage in violation of 410 ILCS 513/25(c)(1). Defendants have moved to dismiss Plaintiffs' claims on several theories, each of which should be rejected. ("Motion to Dismiss" or "Mot.," Dkt. 28).

First, Defendants argue that Plaintiffs' Complaint is factually deficient. For example, Defendants claim that a request for "generic" family medical history pled in Plaintiffs' Complaint cannot be the basis for Plaintiffs' GIPA claims. This argument ignores that Plaintiffs plead precise examples of "genetic information" that was unlawfully requested by Defendants (i.e. inheritable diseases and conditions running in their family members, including high blood pressure, cancer, diabetes, and heart disease), and ignores GIPA's definition of "genetic information" which Defendants cannot – and do not dispute – to mean "the manifestation of a disease or disorder in family members of such individual." Courts interpreting identical language in the context of the federal Genetic Information Nondiscrimination Act (GINA), have ruled that the "genetic information" – family medical history – pled by Plaintiffs here is sufficient to state a claim under GINA, which also prohibits employers from soliciting or requesting employees' genetic information.

1

Second, Defendants argue that Plaintiffs don't plead facts to support that such "genetic information" was requested as a condition of employment and therefore cannot state a claim under GIPA. But Defendants overlook that GIPA is clear that "genetic information" may not be solicited, requested, required or purchased as a [i] condition of employment or [ii] *as part of the preemployment application*. Plaintiffs directly allege that Defendants' requests for their family medical histories were part of the preemployment application process and were mandatory.

Third, Defendants suggest that Plaintiffs' well-pled Complaint is insufficient because it lacks allegations that Defendants "misused" Plaintiffs' genetic information or "discriminated" against Plaintiffs based on their genetic information. This argument simply confuses the specific provision of GIPA underlying Plaintiffs' claims. Plaintiffs are not bringing claims under other parts of GIPA that address misuse and discrimination (*i.e.*, Sections 25(c)(2) and 25(c)(3)), but rather seek relief under Section 25(c)(1) which prohibits the solicitation of genetic information in the first place. Defendants' attempt to blur the separate prohibitions set forth in Section 25 of GIPA contravenes the plain statutory language.

Fourth, Defendants argue that even if they did solicit Plaintiffs' genetic information, it was still lawful because they were doing so to comply with federal statutes such as OSHA and the FAA. But Defendants do not – because they cannot – identify any directives, standards, regulations, or caselaw to support their contention that OSHA regulates preemployment practices and the screening of prospective employees, because none exist. OSHA regulates workers' safety and conditions in the workplace, and GIPA permits genetic information to be used in mandatory workplace wellness programs under certain conditions that are irrelevant here, such as where the employer receives written authorization from the employee.

Fifth, Defendants argue that Plaintiff McKnight's claims should be dismissed because they contend that their unlawful conduct occurred in Maryland where she resides. But Defendants conveniently omit from their analysis Plaintiff McKnight's specific allegations that her genetic information was solicited by Defendants' recruiters in Chicago, Illinois, and the exterritoriality doctrine under Illinois law is clear that it does not bar claims where the transaction or violation emanated from Illinois. Plaintiff McKnight's allegations that her genetic information was solicited through calls and messages directly from Defendants' employment team in Chicago, Illinois, where Defendants are headquartered and create their employment policies, are sufficient at the pleading stage to infer that Defendants' GIPA violations occurred primarily and substantially in Illinois.

Sixth and finally, Defendants argue that Plaintiffs fail to plead Defendants' state of mind when violating GIPA and thus fail to state claims for heightened damages under GIPA. This Court and many others have rejected similar arguments in cases involving the Illinois Biometric Information Privacy Act ("BIPA") – which, like GIPA, permits heightened damages awards for reckless or intentional conduct – and ruled that plaintiffs need not plead specific facts regarding defendants' *mens rea* to proceed with their heightened damages requests. Because GIPA, like BIPA, imposes liability regardless of a defendant's state of mind, Plaintiffs' request for increased damages due to Defendants' reckless or intentional conduct should be sustained.

For those reasons, and as discussed in further detail below, Defendants' Motion should be denied in its entirety.

## II.  <u>FACTUAL ALLEGATIONS</u>

Defendants form one of the largest airline companies in the airline industry, operating a global fleet of aircraft. Defendants employ thousands of individuals across the nation, including in Illinois, and they recruit their employees nationwide from their headquarters in Chicago, Illinois.

(FAC ¶ 25). Plaintiffs' claims against Defendants under GIPA are very straightforward. Each of the Plaintiffs, Ginnie McKnight, Jacqueline Garrison, and Adriana De León, allege that they applied to work at United Airlines. (FAC ¶¶ 30, 40, 49). As alleged, "as part of the application and hiring process, and as a precondition of employment" Defendants required Plaintiffs to answer questions concerning their family medical history, *i.e.* the manifestation of diseases or disorders in their family members. (FAC ¶¶ 32-33, 42-43, 50). Such questions included whether any of their family members had a history of high blood pressure, cancer, diabetes, heart disease, and other medical conditions. (*Id*.) In response, Plaintiffs disclosed their genetic information, including diseases and disorder with which their family members have been diagnosed. (FAC ¶¶ 34, 44, 51). Accordingly, Plaintiffs filed this case against Defendants under GIPA, 410 ILCS 513/25(c), which prohibits employers, including Defendants, from soliciting, requesting, requiring or purchasing genetic information of a person as a condition of employment or preemployment application. (FAC ¶¶ 2, 37, 39, 46, 48, 52, 54, 66, 67). GIPA specifically defines "genetic information" by reference to HIPAA as specified in 45 C.F.R. § 160.103 to include the manifestation of a disease or disorder in family members of an individual, which is exactly the information Plaintiffs allege was solicited and/or requested by Defendants as part of their preemployment application and as a condition of employment. (FAC ¶¶ 3, 26-27, 32-33, 42-43, 50, 65).

### III.   **LEGAL STANDARD**

Where a defendant moves to dismiss a complaint under Federal Rule 12(b)(6), the motion does not test the merits of the plaintiff's claims; rather it "tests only the legal sufficiency of the complaint." *Hanley v. Green Tree Serv., LLC*, 934 F. Supp. 2d 997, 980 (N.D. Ill. 2013) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). When considering a Rule 12(b)(6) motion, the court must construe the complaint "in the light most favorable to the nonmoving party,

accept well-pleaded facts as true, and draw all inferences in [the plaintiff's] favor." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.*, 657 F.3d 496, 502 (7th Cir. 2011). A complaint will survive a Rule 12(b)(6) motion as long as it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Supreme Auto Transport v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1036 (N.D. Ill. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007)).

## IV.  **ARGUMENT**

### A.  **Family Medical History Constitutes Genetic Information Protected By GIPA.**

Defendants misconstrue Plaintiffs' well-pled Complaint to argue that Plaintiffs fail to sufficiently allege that Defendants solicited information protected by GIPA. (Mot. at 7-9). But as acknowledged by Defendants, GIPA defines "genetic information" as including, *inter alia*, "the manifestation of a disease or disorder in family members of [an individual]." (Mot. at 3) (citing 410 ILCS 513/10, 45 C.F.R. 160.103). And as Defendants conveniently overlook, Plaintiffs more than adequately put Defendants on notice as to the exact "genetic information" Plaintiffs allege Defendants unlawfully solicited.

Here, Plaintiffs directly allege that Defendants, as a precondition of employment and as part of Plaintiffs' preemployment applications, required them to answer questions concerning their genetic information, including the manifestation of diseases or disorders in their family members. Specifically, Plaintiff McKnight alleges that when she applied for a job position with Defendants

in May of 2022, "Defendants required Plaintiff McKnight to submit to at least three different physical examinations" (FAC ¶¶ 30, 32) where she had to answer questions concerning "her family medical history, *i.e.* the manifestation of diseases or disorders in her family members. Such questions included whether Plaintiff' McKnight s family members had a history of *high blood pressure, cancer, diabetes, heart disease*, and other medical conditions." (FAC ¶ 33 (emphasis added)). In response, Plaintiff McKnight disclosed the inheritable diseases and disorders "including diseases and disorders with which her family members have been diagnosed." (FAC ¶ 34). In addition, Plaintiff McKnight further alleges that Defendants' Chicago-based recruiters continuously contacted Plaintiff McKnight requesting that she "further disclose and verify her family medical history." (FAC ¶ 35). Similarly, Plaintiff Garrison alleges that when she applied for a job position with Defendants in June of 2022, "Defendants required Plaintiff Garrison to submit to a physical examination", (FAC ¶¶ 40, 42), where she had to answer questions concerning "her family medical history, *i.e.* the manifestation of diseases or disorders in her family members. Such questions included whether Plaintiff Garrison's family members had a history of *cancer, heart disease*, and other medical conditions." (FAC ¶ 43) (emphasis added). Finally, Plaintiff De León alleges that when she applied for a job position with Defendants in October of 2021, Defendants similarly required Plaintiff De León to answer questions concerning "her family medical history, *i.e.* the manifestation of diseases or disorders in her family members." (FAC ¶¶ 49, 50). These allegations are more than sufficient to "provide [Defendants] with fair notice" of the basis for Plaintiffs' claims and allege facts that, if true, would entitle Plaintiffs to relief. *Logan v. Ramirez*, No. 21-cv-0131, 2022 WL 523104, at *1 (N.D. Ill. Feb. 22, 2022) (Coleman, J.).

Defendants attempt to cherry-pick decisions involving the federal Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff, *et seq.* ("GINA"),[1] which defines "genetic information" similarly to GIPA in that GINA's definition includes "the manifestation of a disease or disorder in family members of such individual," to support their argument, but courts have ruled that the family medical conditions identified by Plaintiffs here such as heart disease, high blood pressure, or cancer (FAC ¶¶ 33, 43), are sufficient to state claims under GINA. See *Lee v. City of Moraine Fire Dept.*, 3:13-cv-222, 2015 WL 914440, at *11 (S.D. Ohio Mar. 3, 2015) (granting summary judgment to plaintiff on GINA claim where questionnaire asked about family history of heart disease); *EEOC v. Grisham Farm Products, Inc.*, 191 F. Supp. 3d 994, 998 (W.D. Mo. 2016) (granting EEOC summary judgment on GINA violation where employer questioned applicants if they consulted a medical provider for conditions such as high blood pressure, heart disease, or breast cancer, or based on family history and risk factors); *see also Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 2:17-cv-01649-MHH, 2022 WL 2959569, at *16 (N.D. Ala. July 26, 2022) (granting plaintiff summary judgment on GINA violations where employer indisputably asked its job candidates "whether their grandparents, parents, or children had significant medical problems").

Notably in *Dolgencorp*, the defendant did not deny that it requested job candidates to answer whether "their grandparents, parents, or children had significant medical problems" and henceforth the Court reasoned that the defendant violated GINA's subsection (b) (42 U.S.C. § 2000ff-1(b)) which prohibits an "employer [from] request[ing], requir[ing], or purchas[ing]

---

[1] Although GIPA and GINA share similar definitions of genetic information, GIPA is broader in scope than GINA. For example, an employer who inquires about the manifestation of a disease in an individual's spouse would be in violation of GIPA, but not GINA, because only GIPA includes an individual's spouse as being within the definition of a "family member". See 410 ILCS 513/10, 42 U.S.C. § 2000ff(3).

*genetic information* with respect to an employee or a family member of the employee." 2022 WL 2959569, at *16. Under GINA, like GIPA, "genetic information" of an individual is also defined, *inter alia*, as "the manifestation of a disease or disorder in family members of such individual." 2022 WL 2959569, at *15. Here, as in *Dolgencorp,* Defendants do not deny that they requested such family medical history information as pled by Plaintiffs McKnight, Garrison and De León. Instead, Defendants simply label such pleadings concerning Plaintiffs' family medical history requests as "generic" or "conclusory." (Mot. at 7-9). But as described above, courts interpreting similar family medical history requests by employers in medical questionnaires or medical physical disagree. *Grisham*, 191 F. Supp. 3d at 998; *Dolgencorp, LLC*, 2022 WL 2959569, at *16; *City of Moraine Fire Dept.*, 2015 WL 914440, at *11.

Defendants' citations to GINA decisions are readily distinguishable. For example, in *Green v. Whataburger Rests. LLC*, the plaintiff's complaint was devoid of any facts to "explain or provide any context to put Defendants on notice as to what her or her daughter's 'medical history' or 'genetic information' might be." *Green*, No. 5:17-cv-243, 2018 WL 6252532, at *2 (W.D. Tex. Feb. 22, 2018). The court ruled that "[b]ecause Plaintiff does not allege any plausible factual support that would allow the Court to infer that either her or her daughter's 'medical history' or 'genetic information' constitutes 'genetic testing' or 'genetic information,' Plaintiff failed to state a valid claim under GINA." *Id*. Here, in contrast, Plaintiffs' well-pled Complaint states precisely which inheritable family diseases and disorders Defendants required Plaintiffs to disclose. (FAC ¶¶ 33, 43). Defendants' reliance on *Munnerlyn v. Installed Bldg. Prod.*, *LLC* is similarly misplaced. In *Munnerlyn,* the court was clear that the plaintiff's allegation the defendants were aware "that he had been diagnosed with epilepsy and was taking medication for epilepsy" because the plaintiff's *own* diagnosis constituted "medical information" under GINA, and not "genetic information."

*Munnerlyn, LLC*, No. 1:20-cv-225-LY, 2020 WL 2528547, at *3 (W.D. Tex. May 18, 2020) ("An employer, however, does not violate GINA through 'the use, acquisition, or disclosure of *medical information* that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member") (internal citations omitted). If anything, *Munnerlyn* actually supports Plaintiffs' claims because they are based on Defendants' solicitation information concerning the manifestation of inheritable conditions in their family members like cancer and heart disease, rather than any of Plaintiffs' *own* medical conditions and/or diagnoses. *Id.*

Defendants' other cited authorities are distinguishable on this basis as well. See *NA. B Duignan v. City of Chicago*, 275 F. Supp. 3d 933, 939 (N.D. Ill. 2017) (a plaintiff may not rely on her own actual diagnosis of Huntington's disease to state a GINA claim); *Conner-Goodgame v. Wells Fargo Bank*, No. 2:12-cv-03426, 2013 WL 5428448, at *11 (N.D. Ala. Sept. 26, 2013) (finding that AIDS is non-genetic information when the plaintiff "had no chance of acquiring HIV in the future as a result of her deceased mother's AIDS. Any chance Conner–Goodgame had of acquiring HIV from her mother ended with Plaintiff's infancy."); *Baum v. Dunmire Prop. Mgmt., Inc.*, 21-cv-00964-CMA-NYW, 2022 WL 889097, at *7 (D. Colo. Mar. 25, 2022) (the plaintiff "disclosed that her father had COVID-19. This is not the kind of genetic information contemplated by GINA. Indeed, contracting COVID-19 is not a disease caused by a "genetic disposition.") Defendants' reliance on *Poore v. Peterbilt of Bristol, L.L.C.* is inapposite because there, the plaintiff's claim stemmed from his *wife's* diagnosis of multiple sclerosis, which had nothing to do with the plaintiff's propensity to develop the disease. *Poore,* 852 F. Supp. 2d 727, 731 (W.D. Va. 2012). Here, Defendants requested, and Plaintiffs were required to provide, information concerning inheritable diseases in family members with whom they are genetically related.

In short, by alleging in detail how and when Defendants solicited their family medical history as a requirement of their preemployment applications, presumably for the sole purpose of identifying applicants that may have genetic-based conditions, such as *high blood pressure, cancer, diabetes, and heart disease,* Plaintiffs more than sufficiently put Defendants on notice of the claims against them and state valid claims under GIPA.

### B. Family Medical History Was Solicited At The Preemployment Stage.

Next, Defendants suggest that Plaintiffs inadequately allege that Defendants solicited their genetic information as a condition of employment. GIPA specifically states that an employer shall not directly or indirectly "solicit, request, require or purchase . . . genetic information of a person or family member of the person . . . as a [i] condition of employment [or] [ii] preemployment application." 410 ILCS 513/25(c)(1). Plaintiffs' Complaint could not be clearer that Defendants solicited "Plaintiffs' and the Class's genetic information as a precondition of employment or as part of their preemployment application," (FAC ¶ 29), and further allege that as part of Defendants' preemployment application and hiring process, Defendants required Plaintiff McKnight and Plaintiff Garrison to submit to physical examinations where Defendants requested their protected family medical histories. (FAC ¶¶ 32-33, 42-43). Similarly, as part of the application and hiring process, and as a precondition of employment, Plaintiff De León alleges Defendants required her to answer questions concerning her family medical history in connection with Defendants' mandatory physical examination. (FAC ¶ 50).

Defendants suggest that Plaintiffs must allege that their "hire or employment" must have hinged completely on their provision of this information (Mot. at 10), but they overlook that GIPA prohibits the solicitation of that information as a part of a preemployment application. Indeed, GIPA expressly states that genetic information may not be solicited, requested, required or

purchased as a "condition of employment" *or* as part of the "preemployment application." 410 ILCS 513/25(c)(1). Plaintiffs plead, and Defendants do not deny, that Defendants' requests employee for family medical history were part of the mandatory preemployment application process, which is more than plausible considering that Defendants generally request such information of all applicants. (FAC ¶¶ 26, 32, 42, 50). Nor do Defendants contest Plaintiffs' allegations that Defendants never told them they did not have to provide such information (FAC ¶¶ 28, 38, 47, 53, 71). Therefore, it is more than plausible that where Defendants' applicants fail to complete Defendants' mandatory preemployment procedures, as with Plaintiff McKnight (FAC ¶ 36), they will not be offered employment.

Defendants attempt to conflate the issue of employers subjecting their employees to mandatory "wellness programs" with the issue of employers subjecting their prospective employees to mandatory requests for family medical history as part of the preemployment application, which are two separate issues under GIPA. GIPA permits the collection of protected genetic information as part of "wellness programs" under certain circumstances such as if, for example, the employee provides written authorization. 410 ILCS 513/25(e). In comparison, GIPA's subsection 25(c), which relates to preemployment procedures, unambiguously prohibits the solicitation of genetic information as part of a preemployment application. By not including any consent-related or other caveats, the Illinois Legislature's intent was clear. Therefore, Defendants' reliance on *Ortiz v. City of San Antonio Fire Dep't*, another GINA decision involving a workplace wellness program, is inapposite. There, the plaintiff "misread [GINA] as forbidding *any* mandatory wellness program, regardless of whether it involves a request for or the acquisition of genetic information." *Ortiz*, 806 F.3d 822, 826 (5th Cir. 2015) (emphasis in original). Here, Plaintiffs' claims are not based on any workplace wellness program, but rather stem from GIPA's

straightforward prohibition against employers' collection of genetic information during the preemployment application process. Thus, the Court should deny Defendants' Motion to Dismiss on this basis as well.

C.   **Plaintiffs' Claims Are Not About "Misuse" or "Discrimination" of Their Genetic Information.**

Just as Defendants attempt to read out "preemployment application" from Section 25(c) from GIPA, as discussed above, they further abuse GIPA's plain language by attempting to read in an exception to GIPA permitting them to solicit genetic information as part of a preemployment application so long as they do not "misuse" that information. (Mot. at 11-13). This argument – based on HIPAA's definition of "use" – is completely meritless because it has no connection with the statutory text.

As explained above, Plaintiffs' claims arise under Section 25(c)(1) of GIPA which plainly states that Defendants cannot "solicit, request [or] require" genetic information as part of their preemployment application process or as a condition of employment. The word "use" – a defined term under GIPA – does not appear in Section 25(c)(1) at all. The Illinois Legislature chose to include "use" in other GIPA provisions – such as the provision addressing workplace wellness programs (Section 25(e) – indicating the selection of specific verbs in Section 25(c)(1) was purposeful and meant to prohibit the solicitation of genetic information during the employment application process, period.

Thus, Defendants' reliance on *Tovar v. United Airlines Inc.* is nonsensical. There, the plaintiff alleged a claim for discrimination under a provision of GINA "where it is unlawful for an employer to 'discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee.'" *Tovar*, 985 F. Supp. 2d 862, 874

(N.D. Ill. 2013). The court granted summary judgment against the plaintiff because "there is no evidence that [defendant] [was] aware that [plaintiff's] mother has diabetes when they terminated [plaintiff]." *Id*. (internal citations omitted). Like GINA, GIPA has provisions that relate to discrimination (410 ILCS 513/25(c)(2)-(3)), but Plaintiffs' claims have nothing to do with those discrimination provisions. Their claims arise from Defendants' solicitation of their genetic information as part of their preemployment applications, which GIPA unambiguously prohibits. The Court should thus reject Defendants' arguments concerning HIPAA's definition of "use" because it has nothing to do with Plaintiffs' claims.

### D. Defendants' Pre-Employment Procedures Requesting Family Medical History Were Unlawful.

In another effort to circumvent Section 25(c)(1) of GIPA's plain language, Defendants baldly assert that their violations should be excused because pre-employment health screenings are not *per se* unlawful. That may be true, but Plaintiffs' claims are not based on Defendants' pre-employment health screenings generally, they are based on the fact that Defendants request protected genetic information *as part of* those health screenings. Curiously, Defendants argue that "courts interpreting GIPA have concluded that it affords employers discretion to make relevant and necessary medical inquiries to determine an individual's fitness to do the job," (Mot. at 13), but then cite a slew of unrelated cases – *none* of which involved GIPA, or even GINA – seemingly to argue that requiring mandatory pre-employment physicals is generally not unlawful. *See King v. Smithfield Food*, No. 08-cv-487, 2009 WL 10688336, at *6 (E.D. Va. Sept. 23, 2009) (non-GIPA nor GINA employment discrimination case); *Wice v. Gen. Motors Corp*., No. 07-cv-10662, 2008 WL 5235996, at *4 (E.D. Mich. Dec. 15, 2008) (same); *Chicago Reg'l Council of Carpenters v. Berglund Constr.* Co., No. 12-cv-3604, 2013 WL 6693547, at *3 (N.D. Ill. Dec. 19, 2013) (same); *Sisco v. Morton Bldg., Inc.*, No. 19-cv-02787-HLT, 2022 WL 266809, at *6 (D. Kan. Jan.

28, 2022) (same). While ensuring workers' safety may be regulated by federal statutes such as OSHA or the FAA, Defendants do not – because they cannot – point to any directives, standards, regulations, or any caselaw suggesting that OSHA regulates preemployment practices. Nor do Defendants argue that complying with GIPA would make them violate either OSHA or the FAA. They cannot, because GIPA and OSHA, for instance, do not contradict each other. *See City of Moraine Fire Dept.*, 2015 WL 914440, at *1 (S.D. Ohio Mar. 3, 2015) (granting summary judgment to plaintiff on GINA claim where an OSHA questionnaire requested family history of heart disease).

As the name itself implies, the Occupational Safety and Health Administration regulates workers' conditions and safety through medical screening and surveillance while on the job. But notably, "*OSHA does not require an employer to force the employees to take medical examinations*. However, OSHA's regulations are intended as minimum standards. Employers can adopt more stringent requirements for themselves, and in doing so, *may enforce mandatory participation in programs* within the guidelines of labor/management relations."[2] (emphasis added). But as Plaintiffs state in their well-pled Complaint, Plaintiffs McKnight, Garrison and De León did "not provide [their] genetic information in furtherance of a workplace wellness program." (FAC ¶¶ 38, 47, 53). It is also worth noting that OSHA was enacted in 1970, and GIPA was enacted in 1998. When GIPA was enacted, the Illinois Legislature was well aware of OSHA, not only because it already existed for 28 years, but also because GIPA specifically mentions the Occupational Safety and Health Act of 1970 in 410 ILCS 513/25(a). Defendants pretend that this reference means they cannot violate GIPA if they are compliant with OSHA, when clearly the nod to OSHA in Section 25(a) is meant to incorporate federal law's protections into GIPA as a

---

[2] https://www.osha.gov/laws-regs/standardinterpretations/1987-08-06

minimum. If the reference to OSHA were construed to mean that employers subject to OSHA (nearly all private sector employers) are immune from GIPA's more stringent regulations concerning what information can be solicited pre-employment, many of GIPA's employment-related provisions would be pointless. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013) ("The fact that a state has more stringent regulations than a federal law does not constitute conflict preemption. Otherwise every time a state chose to apply a more rigorous standard when regulating conduct within the state, the result would be impermissible. We know, however, that states frequently, and without preemption by federal law, create more stringent laws").

As discussed above, there is nothing inconsistent with requiring Defendants to comply with GIPA and federal law requirements under OSHA and the FAA. Here, based on the current record, the Court cannot find that GIPA somehow "stands as an obstacle" to Congress's clear intent regarding worker's safety and working conditions in OSHA or the FAA. *See Karling v. Samsara Inc.*, 610 F. Supp. 3d 1094, 1100 (N.D. Ill. 2022). To the contrary, based on the discussions above, there are no obstacles, for complying and/or satisfying both federal law and GIPA. *Id.* (rejecting defendant's preemption-related arguments in a BIPA case because of the "fact-based nature of a conflict preemption inquiry and its usual inappropriateness on a motion to dismiss"). Similarly, to the extent Defendants suggest in passing that GIPA violations were inadvertent (Mot. at 3, fn. 4), that argument is entirely undeveloped and, to the extent Defendants were to claim that defense, discovery would be necessary considering Defendants' practice of unlawfully requesting genetic information from applicants as their general practice.

In sum, Defendants conclusory argument that Plaintiffs' claims are somehow inconsistent with OSHA or the FAA is legally and factually baseless, as they make no showing that compliance

with OSHA and the FAA somehow interferes with complying with GIPA. Defendants' Motion to Dismiss should be denied on this basis as well.

### E. Plaintiff McKnight Sufficiently Alleges That Defendants' GIPA Violations Occurred In Illinois.

Plaintiff McKnight alleges that when applying for a job with Defendants, who are headquartered in Illinois, their United Airlines recruiters located in Chicago, Illinois called and messaged here to disclose and verify her family medical history. (FAC ¶¶ 35, 36). At the pleadings stage, when all factual allegations must be construed in Plaintiff McKnight's favor, these allegations are sufficient to plausibly allege that Defendants' GIPA violations, including their solicitation of her genetic information, occurred primarily and substantially in Illinois. Defendants conveniently omit these allegations from their analysis, and instead focus on Plaintiff McKnight's residency in Maryland and her application for a role with Defendants in Virginia to argue that McKnight's injuries sustained from Defendants occurred primarily and substantially outside of Illinois. (Mot. at 16). As Defendants admit, however "[a]t the motion to dismiss stage, determining whether the disputed events occurred primarily and substantially in Illinois is based on the facts alleged in the complaint." (Mot. at 15, citing *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009)). The extraterritoriality doctrine concerns whether "the circumstances that relate to the disputed transaction [have] occur[red] primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). In determining whether Plaintiff's claims would require extraterritorial application of GIPA, "courts look to the residency of the plaintiff, the location of harm, communications between parties (where sent and where received), and where a company policy is carried out." *Mahmood v. Berbix, Inc.*, No. 22-cv-2456, 2022 WL 3684636, at *1 (N.D. Ill. Aug. 25, 2022) (Coleman, J.) (internal quotations omitted). Here, while Plaintiff McKnight is not an Illinois resident, her allegations that the solicitation of her protected

genetic information occurred from Defendants' headquarters in Chicago, by their recruiters located in Chicago, are sufficient to show that Plaintiff McKnight's alleged GIPA violations emanated from and took place in Illinois, because the only factor in Defendants' favor is Plaintiff's residence. Plaintiff McKnight's allegation that Defendants Chicago-based recruiters contacted her to verify her sensitive genetic information obviously implies that Defendants aggregate and collect applicants' information in Illinois, regardless of their state of residence, such that the privacy harms emanating from Defendants' GIPA violations have a direct connection with Illinois. Moreover, Plaintiffs allege that Defendants recruit employees nationwide from their headquarters in Illinois, or in other words, manage and carry out their preemployment application policies from within Illinois. (FAC, ¶ 25). Thus, Plaintiff McKnight sufficient alleges facts showing that Defendants' violations meet three of the four factors – location of harm, where the unlawful solicitation emanated from, and where Defendants' policies are carried out – such that she sufficient alleges Defendants' violations substantially and primarily occurred in Illinois. At the very least, the question of whether Defendants' violations occurred in Illinois should be decided with the benefit of discovery. *Mahmood*, 2022 WL 3684636, at *2 (Coleman, J.) (recognizing that "applying the extraterritoriality doctrine is a fact intensive inquiry best left for summary judgment").

Defendants' reliance on *Wooley v. Bridgeview Bank Mortg. Co., LLC* is distinguishable. (Mot. at 16). In *Wooley*, which involved claims under the Illinois Minimum Wage Law, the non-resident plaintiffs "worked in Overland Park, Kansas. They reported their hours there, were paid there, and were allegedly undercompensated there." *Wooley*, No. 14-cv-5757, 2015 WL 327357, at *3 (N.D. Ill. Jan. 23, 2015). The plaintiffs only alleged that the defendant was based in Illinois. and created its "reporting procedures" from Illinois. *Id.* Here, to the contrary Plaintiff McKnight

clearly alleges not only Defendants are located in Illinois, collected her sensitive genetic information in Illinois, and carry out their preemployment policies in Illinois, she alleges that United Airlines recruiters located in Chicago, Illinois initiated the solicitation of her family medical history from Chicago. (FAC ¶¶ 35, 36, 37). Similarly, in *Garrard v. Rust-Oleum Corp.*, the only Illinois-connection to the warranty claims at issue was "that Rust-Oleum is based in Illinois." *Garrard*, 575 F. Supp. 3d 995, 1002 (N.D. Ill. 2021) (internal citations omitted). In *Robinson v. DeVry Educ. Group, Inc.,* the out-of-state plaintiffs did not allege that their allegedly unlawful communications with the Defendant emanated solely from Illinois, nor did that case involve facts similar to Plaintiff's McKnight here, where Defendants gathered her sensitive genetic information in Illinois. In short, aside from her residence, Plaintiff McKnight's allegations implicate every other factor relevant to the extraterritorial analysis, and are sufficient to find that Defendants' solicitation of her genetic information for preemployment purposes occurred primarily and substantially in Illinois. At a minimum, the Court should reject Defendants' argument at this stage and revisit the extraterritorially issue with the benefit of a full factual record.

**F.      Plaintiffs Properly Allege That Defendants' GIPA Violations Were Reckless Or Intentional.**

Defendants also request that the Court dismiss Plaintiffs' request for heightened damages under 410 ILCS 513/40(a), arguing that the Complaint lacks sufficient facts to infer that Defendants' GIPA violations were reckless or intentional. Defendants contend that Plaintiffs must allege Defendants' "state of mind" when violating GIPA. (Mot. at 17-18). Defendants rely wholly on outdated decisions involving BIPA claims because GIPA allows for enhanced statutory liquidated damages for each intentional or reckless violation of its provisions, 410 ILCS 513/40(a)(2), and $2,500 for each negligent violation, 410 ILCS 513/40(a)(1). Defendants ignore, however, that the vast majority of courts in this District, including this Court, have concluded that

such allegations are not required. *Mahmood v. Berbix, Inc.*, 2022 WL 3684636, at *3 ("A request for enhanced damages is a demand for relief, not part of a [GIPA] claim, therefore, [Plaintiffs] need not allege facts to show [they are] entitled to this enhanced relief").

Moreover, Defendants incorrectly assert that Plaintiffs do not support their request for heightened damages with factual allegations. Plaintiffs allege that GIPA's prohibitions have been in effect for years, but Defendants ignored them, (FAC ¶ 74), which courts in the BIPA context found sufficient to create a reasonable inference that the statutory violations were reckless or intentional. *See Rogers v. BNSF Ry. Co.*, No. 19- cv-3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("[T]he BIPA took effect more than ten years ago, and if the allegations of his complaint are true—as the Court must assume at this stage—BNSF has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible"); *Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, No. 20-cv-3200, 2020 WL 7490414, at *7 (N.D. Ill. Dec. 21, 2020) ("The complaint's allegation that in 2016, "defendants knew, or were reckless in not knowing" that the timekeeping system was subject to BIPA's requirements is plausible . . . Yet defendants made no effort to comply with BIPA. This is enough to allege a negligent, reckless, or intentional violation").

Because GIPA's statutory damages regime is similar to BIPA's, and because Plaintiffs also allege sufficient facts to infer that Defendants' violations of GIPA were reckless or intentional, the Court should sustain its well-reasoned analysis in *Mahmood* and sustain Plaintiffs' enhanced damages request at this stage of the litigation.

## V.     <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs Ginnie McKnight, Jacqueline Garrison, and Adriana De León respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety.[3]

Dated: March 15, 2024

Respectfully submitted,

GINNIE MCKNIGHT, JACQUELINE GARRISON & ADRIANA DE LEÓN, individually and on behalf of similarly situated individuals

By: /s/ Andrew T. Heldut
*One of Plaintiffs' Attorneys*

Evan M. Meyers
Timothy P. Kingsbury
Andrew T. Heldut
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
tkingsbury@mcgpc.com
aheldut@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class*

---

[3] Should the Court grant Defendants' Motion in whole or in part, Plaintiffs request that any such dismissal be made without prejudice to provide Plaintiffs with an opportunity to cure any defects in their pleading.

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2024, I caused the foregoing *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Andrew T. Heldut