UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GINNIE MCKNIGHT, JACQUELINE GARRISON, and ADRIANA DE LEÓN, Individually and on Behalf of Similarly Situated Individuals,<br><br>      Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC., and UNITED AIRLINES HOLDINGS, INC.,<br><br>      Defendants. | Case No. 23-cv-16118<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Ginnie McKnight, Jacqueline Garrison, and Adriana De León bring a putative class action against United Airlines, Inc., and United Airlines Holdings, Inc. (together, "United"), alleging that United violated Section 25(c)(1) of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1 *et seq*. Before the Court is United's Motion to Dismiss [27] under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies that motion.

**BACKGROUND**

As the Seventh Circuit recently noted, "[m]any courts have developed great familiarity with Illinois's privacy protection provisions in recent years" through the many cases in this circuit brought under the Illinois Biometric Information Privacy Act of 2008 ("BIPA"). *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). Plaintiffs bring their case under the "[l]ess known and litigated" Genetic Information Privacy Act of 1998, which, like the *Bridges* court, they refer to as "GIPA." *Id.*

The Illinois legislature enacted GIPA to combat public fear over the unlawful disclosure of genetic information and discrimination based on that information. *See* 410 ILCS 513/5. To that

1

end, GIPA regulates the "use of genetic testing information by employers." 410 ILCS 513/25. Plaintiffs allege that United violated this section of GIPA by requiring them all to disclose family medical history as a precondition of employment.

Plaintiffs' allegations are taken as true for the purpose of this opinion. United is a Chicago-based airline. All three Plaintiffs applied for jobs with United. Plaintiff McKnight, who is a Maryland resident, applied for a job with United in Dulles, Virginia. Plaintiffs Garrison and De León, who are both Illinois residents, applied for jobs with United in Chicago. Plaintiffs allege that they communicated directly with United's Talent Acquisition Team located in Chicago.

Plaintiffs also assert that they were required to complete physical examinations as part of the application and hiring process. During these examinations, Plaintiffs were required to answer questions about their family medical history, including about family history with high blood pressure, cancer, diabetes, heart disease, and more. According to Plaintiffs, United solicited this information in Chicago as a condition of their employment and preemployment application.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all of the plaintiff's allegations as true and views them in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). To survive a motion to dismiss, the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

DISCUSSION

    1. **Genetic Information and Family Medical History**

Plaintiffs allege that United "required [them] to answer questions regarding [their] family medical history," including family "history of high blood pressure, cancer, diabetes, heart disease, and other medical conditions," as a precondition of employment. (Dkt. 17 ¶¶ 32–33; *see also id.* ¶¶ 43, 49, 50.) United argues that this kind of medical history does not constitute GIPA-protected "genetic information." The Court disagrees.

GIPA regulates the use, disclosure, and acquisition of "genetic information." *See* 410 ILCS 513/1 *et seq.* Relevant here, GIPA Section 25(c)(1) prohibits employers from "solicit[ing], request[ing], or requir[ing]" the "genetic information of a person … as a condition of employment [or] preemployment application." 410 ILCS 513/25(c)(1). "Genetic information" under GIPA has the same meaning as "genetic information" under the HIPAA Privacy Rule—that is, GIPA adopts the definition of "genetic information" from 45 CFR § 160.103. *See* 410 ILCS 513/10. Subject to additional provisions not applicable here, "genetic information" therefore means: "(i) The individual's genetic tests; (ii) The genetic tests of family members of the individual; (iii) The manifestation of a disease or disorder in family members of such individual; or (iv) Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual." 45 CFR § 160.103.

Neither party briefed any case law interpreting the relevant provision of GIPA. This Court also did not discover any such cases in its own research. Shortly after briefing, however, Plaintiffs submitted supplemental authority from this district holding that a plaintiff adequately alleged a claim under Section 25(c)(1) of GIPA where she claimed that "someone at [the defendant's] direction (and for [the defendant's] benefit) required plaintiff to disclose whether cardiac diseases, cancer, and diabetes manifested in her parents" as "a condition of the hiring process." *Weller v. Sagility, LLC*, 23-

cv-15626, Dkt. 19 (N.D. Ill., Mar. 25, 2024) (Shah, J.) (citation omitted). That holding is consistent with this Court's reading of GIPA.

Given the lack of available GIPA cases, the parties turn to cases addressing the federal Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff, which in some instances uses terms identical to those used in GIPA. *Compare* 42 U.S.C. § 2000ff(4)(A)(iii) (defining "genetic information" to include "the manifestation of a disease or disorder in family members of such individual"), *with* 45 C.F.R. § 160.103 (same). GIPA also references GINA, requiring that "[a]n employer … shall treat genetic testing and genetic information in such a manner that is consistent with … the Genetic Information Nondiscrimination Act of 2008." 410 ILCS 513/25(a). Because of the statutes' parallel language, and the parallel intentions expressed by the Illinois legislature, the Court will look to interpretations of GINA as an aid to interpreting GIPA.

There is a consistent rule expressed or implied in the parties' cases: GINA's term "manifestation of a disease or disorder in an individual's family members" is limited to family members' diseases or disorders that suggest another family member's genetic predisposition to the condition. *Compare Baum v. Dunmire Prop. Mgmt., Inc.*, No. 21-CV-00964-CMA-NYW, 2022 WL 889097, at *7 (D. Colo. Mar. 25, 2022) (plaintiff's father's COVID-19 diagnosis is not "genetic information" because it does not have a genetic predisposition), *and Poore v. Peterbilt of Bristol, L.L.C.*, 852 F. Supp. 2d 727, 731 (W.D. Va. 2012) (plaintiff's wife's diagnosis of multiple sclerosis is not "genetic information" because it has no predictive value about plaintiff's propensity to contract the disease), *and Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 2:12-CV-03426-IPJ, 2013 WL 5428448, at *11 (N.D. Ala. Sept. 26, 2013) (plaintiff's mother's AIDs diagnosis is not "genetic information" because "[a]ny chance [plaintiff] had of acquiring HIV from her mother ended with Plaintiff's infancy"), *with Lee v. City of Moraine Fire Dep't*, No. 3:13-CV-222, 2015 WL 914440, at *11 (S.D. Ohio Mar. 3, 2015) ("In violation of 42 U.S.C. § 2000ff(4)(A)(iii), [the employer-defendant's agent] asked,

4

'Is there a family history of heart disease with your parents or siblings?'"), *and Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, No. 2:17-CV-01649-MHH, 2022 WL 2959569, at *16 (N.D. Ala. July 26, 2022) (GINA violation where employer asked "job candidates whether their grandparents, parents, or children had significant medical problems").

The EEOC's guidance further supports the rule synthesized in these cases. It clarifies that "GINA is intended to prevent discrimination based on concerns that genetic information about an individual suggests an increased risk of, or predisposition to, acquiring a condition in the future." *See* EEOC Final Rule on Title II of the Genetic Information Nondiscrimination Act of 2008, *available at* https://www.eeoc.gov/regulations-related-genetic-discrimination. This guidance makes clearer that GINA is concerned only with a family's potentially heritable "diseases or disorders."

Such an interpretation is consistent with GIPA's identical language. GIPA does not define "disease or disorder." Although the Court must start with GIPA's plain language, the "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Saint Anthony Hosp. v. Whitehorn*, 100 F.4th 767, 784 (7th Cir. 2024). Statutory terms must therefore be read in context and, if possible, to ensure statutory coherence and consistency. *Id.* The term at issue here (that is, "The manifestation of a *disease or disorder* in family members of such individual") appears in a section defining "genetic information," and is surrounded by three other subsections that all have to do with genetic tests or services. *See* 45 C.F.R. § 160.103. GIPA's purpose is not to regulate medical information generally, but to facilitate and regulate "genetic testing," which entails "analysis of human DNA, RNA, chromosomes, proteins, or metabolites, if the analysis detects genotypes, mutations, or chromosomal changes." 410 ILCS 510/5; 45 C.F.R. § 160.103.

In this context, "disease or disorder" cannot take on its broadest possible meaning. A family member's viral infection or broken bone might in some sense be considered a "disease or disorder," but such medical conditions are generally not connected with the kind of genetic information GIPA

5

is meant to regulate; they shed no light on another family member's propensity for those conditions. The Court thus interprets "[t]he manifestation of a disease or disorder in family members of such individual," as used in GIPA, to be limited to family members' "diseases or disorders" suggesting an individual's genetic predisposition.

In this case, Plaintiffs allege that United solicited or requested their family histories with "high blood pressure, cancer, diabetes, heart disease, and other medical conditions." As the cases above demonstrate, the manifestation of these kinds of diseases, unlike the flu or a broken arm, might suggest Plaintiffs' own predispositions to contract them. Therefore, at this juncture, Plaintiffs have adequately alleged that the information at issue is "genetic information" under GIPA.

2. **Family Medical History as a Condition of Employment**

Section 25(c)(1) of GIPA provides that no employer shall directly or indirectly "solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, or administer a genetic test to a person or a family member of the person *as a condition of* employment, preemployment application, labor organization membership, or licensure." 410 ILCS 513/25(c)(1) (emphasis added). United argues that Plaintiffs fail to plead facts to support a claim that United required family medical history as a condition of employment or preemployment application.

In response, Plaintiffs urge an awkward reading of Section 25(c)(1), arguing that it prohibits soliciting genetic information "as a precondition of employment or *as part of* [] preemployment application." (Dkt. 29 at 10 (emphasis added).) The Court disagrees with Plaintiffs' interpretation. Plaintiffs improperly add the words "as part of" to the statute and ignore the terms "labor organization membership" and "licensure" that complete Section 25(c)(1)'s list. With those terms properly considered, Plaintiffs' reading (linking "condition of" to "employment" alone) makes no sense. Plaintiffs' preferred interpretation would read: "an employer … shall not … solicit … genetic

6

information of a person … as a … labor organization membership, or licensure." The only way to make sense of the whole list is to read "as a condition of" to apply to each term that follows it. Therefore, under Section 25(c)(1), "an employer shall not … directly or indirectly … solicit, request, require or purchase … genetic information of a person … *as a condition of* … preemployment application." 410 ILCS 513/25 (emphasis added).

United next relies on a string of out-of-circuit cases interpreting different uses of "as a condition of" to argue that "'as a condition of employment' means that an individual's hire or employment hinges on it." (Dkt. 28 at 10.) Under this standard, United argues, Plaintiffs allegations do not support that employment was conditioned on the provision of their family medical histories. Plaintiffs advocate for a lower standard in response, though their preferred standard is not clearly articulated. In any case, the Court need not resolve whether United's standard or Plaintiffs' is correct. Plaintiffs' allegations are sufficient to state a claim even under United's proposed standard.

At this stage, the Court must make all reasonable inferences in Plaintiffs' favor. *See Lavalais*, 734 F.3d at 632. Each Plaintiff claims that the physical examination during which they allegedly revealed genetic information was "required" or "mandatory." (*See* Dkt. 17 at ¶¶ 32, 42, 50.) Plaintiffs do not allege that there was any kind of opt-out or alternative procedure. From these allegations, it is reasonable to infer that Plaintiffs would have been excluded from the hiring process or employment had they not completed the physical examination and shared their family medical history. Plaintiffs have therefore adequately alleged that United solicited their genetic information "as a condition of" employment or preemployment application.

### 3. Improper Use of Family Medical History

United construes Plaintiffs' complaint as asserting that United misused Plaintiffs' genetic information, and then argues that Plaintiffs fail to state a claim of misuse. (*See* Dkt. 28 at 11 (citing Dkt. 17 at ¶¶ 1, 36, 45).) But United misreads Plaintiffs' allegations. Plaintiffs' sole claim is that

7

United violated GIPA Section 25(c)(1) by unlawfully soliciting or requesting their genetic information as a condition of employment or preemployment screening. (*See* Dkt. 17 at Count I.) Indeed, the proposed class definition covers only individuals that "applied for employment with Defendants and from whom an employee or an agent of Defendants located in Illinois have *requested and/or obtained family medical history or other genetic information* according to Defendants' records." (*See id.* ¶ 55 (emphasis added).) Section 25(c)(1) prohibits "solicit[ing], request[ing], requir[ing] or purchas[ing]" genetic information as a condition of employment and preemployment application, 410 ILCS 513/25(c)(1), but it says nothing about the use of that information.

Other provisions in Section 25 explicitly address "using" genetic information to discriminate. *See* 410 ILCS 513/25(e). And to the extent that United uses the term "misuse" more broadly, Plaintiffs' allegations clearly fall within the broad definition by alleging that United "misused" genetic information by requesting its disclosure as a condition of employment. The Court therefore rejects United's argument that Plaintiffs inadequately alleged "misuse" of genetic information.

4. **Unlawful Conduct Under GIPA**

United next suggests that its "pre-employment medical examinations, as alleged, were lawful and appropriately required by Defendants." (Dkt. 28 at 13.) But United makes only a perfunctory argument in support of this conclusion. For starters, United cites *Bridges v. Blackstone Grp., Inc.*, No. 21-CV-1091-DWD, 2022 WL 2643968, at *1 (S.D. Ill. July 8, 2022), *aff'd sub nom. Bridges v. Blackstone, Inc.*, 66 F.4th 687 (7th Cir. 2023), for the proposition that GIPA was designed to prevent genetic-based discrimination "while still affording employers the opportunity to make health inquiries necessary and relevant to an individual's ability to perform the essential functions of their job." (Dkt. 28 at 13.) *Bridges* simply does not say that. Indeed, *Bridges* addressed a claim that the defendant wrongfully compelled the disclosure of genetic information through the acquisition of another company; it had nothing to do with preemployment health inquiries. *See id.*, at *1. And although

GIPA was designed to prevent discrimination, it is not *just* an anti-discrimination statute. As described above, GIPA also bars employers from merely "solicit[ing], request[ing], or requir[ing]" the "genetic information of a person … as a condition of employment [or] preemployment application." 410 ILCS 513/25(c)(1).

United is correct to suggest that this prohibition is not absolute. GIPA contains numerous exceptions, *see* 410 ILCS 513/25(e)-(i), and contrary federal laws may preempt GIPA. United makes no real argument, however, that the alleged conduct fits within one of GIPA's exceptions or that Plaintiffs' claims are preempted by federal law. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013) ("The fact that a state has more stringent regulations than a federal law does not constitute conflict preemption. Otherwise every time a state chose to apply a more rigorous standard when regulating conduct within the state, the result would be impermissible. We know, however, that states frequently, and without preemption by federal law, create more stringent laws[.]").[1] Instead, United vaguely asserts that is has "both the right and the obligation to ensure that individuals are physically able to perform the essential functions of the roles, that they can perform their duties without the threat of injury to themselves, and otherwise maintain safe work environments for others." (Dkt. 28 at 14-15.) If this is an attempt to argue that Plaintiffs' claims are preempted by OSHA or the FAA—two statutes United mentions in passing—it is fatally underdeveloped. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)).

Further, United seems to argue that its alleged misconduct is lawful under GIPA's own terms. United asserts that "courts interpreting GIPA have concluded that it affords employers

---

[1] GIPA appears to acknowledge the federal "floor" for genetic information treatment by requiring employers to "treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law," but goes on to prescribe its own, perhaps more stringent, standards. 410 ILCS 513/25.

discretion to make relevant and necessary medical inquiries to determine an individual's fitness to do the job." (Dkt. 28 at 13.) However, United mischaracterizes the cases it relies on for that assertion. No case cited by United addresses GIPA (or even GINA) at all, and each one deals with facts presented at summary judgment. *See, e.g.*, *King v. Smithfield Food*, No. 2:08CV487, 2009 WL 10688336, at *6 (E.D. Va. Sept. 23, 2009) (addressing motion for summary judgment in ADA case), *aff'd*, 352 F. App'x 858 (4th Cir. 2009); *Chicago Reg'l Council of Carpenters v. Berglund Constr. Co.*, No. 12 C 3604, 2013 WL 6693547, at *3 (N.D. Ill. Dec. 19, 2013) (Guzman, J.) (same); *Sisco v. Morton Bldg., Inc.*, No. 2:19-CV-02787-HLT, 2022 WL 266809, at *6 (D. Kan. Jan. 28, 2022) (same), *appeal dismissed*, No. 22-3038, 2022 WL 3646027 (10th Cir. Aug. 17, 2022). *Wice v. Gen. Motors Corp.*, No. 07-10662, 2008 WL 5235996, at *4 (E.D. Mich. Dec. 15, 2008) (addressing motion for summary judgment in ADA, Labor Management Relations Act, and common law invasion of privacy case). United did nothing to correct or acknowledge this misrepresentation in reply, even after Plaintiffs prominently raised the issue. The Court rejects United's argument based on inapplicable case law.

United fails to show how its conduct, as Plaintiffs allege it, is lawful under GIPA, let alone that this issue can be decided without a factual record. The Court therefore rejects United's argument that its pre-employment medical examinations were "lawful and appropriate."

### 5. Extraterritorial Application of GIPA

United argues that Plaintiff McKnight's claims are barred by the extraterritoriality doctrine. Under that doctrine, Illinois statutes do not have "extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85, 835 N.E.2d 801, 852 (2005) (citations omitted). GIPA does not contain an express provision extending its application extraterritorially, *see generally* 410 ILCS 513/1 *et seq.*, so it does not have extraterritorial effect. *See Avery*, 835 N.E.2d at 852. However, an out-of-state plaintiff can sue under GIPA if "the circumstances that relate to the disputed transaction occur[red] primarily

and substantially in Illinois." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery*, 835 N.E.2d at 853–54).

Whether disputed transactions occurred "primarily and substantially in Illinois" is a "highly fact-bound inquiry" with no "bright-line rule." *Id.* Courts look to a variety of factors to determine if alleged conduct occurred in Illinois, including "the residency of the plaintiff, the location of harm, communications between parties (where sent and where received), and where a company policy is carried out." *Mahmood v. Berbix, Inc.*, No. 22 C 2456, 2022 WL 3684636, at *1 (N.D. Ill. Aug. 25, 2022) (Coleman, J.) (quoting *Rivera v. Google Inc.*, 238 F.Supp.3d 1088, 1101 (N.D. Ill. 2017) (Chang, J.)). But those factors are not exhaustive, and the core question is whether "most of the relevant circumstances underlying the alleged" statutory violation had a "connection to Illinois." *Crichton*, 576 F.3d at 396.

The parties, unsurprisingly, highlight competing factors. Plaintiff McKnight relies on her allegations that "[United's] solicitation of her protected genetic information occurred from [its] headquarters in Chicago, by [its] recruiters located in Chicago." (Dkt. 29 at 16-17.) United argues that it is "undisputed that McKnight's residency was in *Maryland*; the harm she allegedly incurred was the revocation of an offer of employment in *Virginia*; she allegedly communicated with Defendants from her residence in *Maryland*, and the disputed medical examinations physically occurred in *Maryland*." (Dkt. 30 at 11 (emphasis in original).) United's last point is based on its own representation; although it is presumably within her personal knowledge, Plaintiff McKnight does not allege where her "three different medical examinations" occurred.

That aside, United mistakes the injury at issue. Plaintiff McKnight does not allege that United unlawfully revoked her offer of employment, but only that it unlawfully "solicit[ed], request[ed], [or] require[d]" her genetic information in violation of her statutory privacy right. 410 ILCS 513/25(c)(1). As the Illinois Supreme Court has explained in a similar context, an entity's

11

failure to adhere to the procedures required by privacy statutes creates an injury that is "real and significant." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34, 129 N.E.3d 1197, 1206 (Ill. 2019). Moreover, neither party adequately addresses a key factor in this case—that is, "where [United's] company policy is carried out." *Mahmood*, 2022 WL 3684636, at *1.

Plaintiff McKnight alleges enough here to warrant further discovery. The Court therefore agrees with Plaintiff McKnight that, at least in this particular case, "applying the extraterritoriality doctrine is … best left for summary judgment." *Mahmood*, 2022 WL 3684636, at *2; *see also Rivera*, 238 F. Supp. 3d at 1102 (noting numerous issues "needing further factual refinement" to determine extraterritoriality defense); *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1292 (W.D. Wash. 2021) (noting that the extraterritoriality doctrine, in the context of another Illinois privacy statute, "is generally inappropriate for the motion to dismiss stage").

The Court rejects United's extraterritoriality argument at this stage.

### 6. Intentional or Reckless Violation Allegations

The damages available under GIPA vary based on the defendant's mental state. A "party who negligently violates a provision of [GIPA]" may be subjected to "liquidated damages of $2,500 or actual damages, whichever is greater." 410 ILCS 513/40(a)(1). In contrast, a "party who intentionally or recklessly violates a provision of [GIPA]" may be subjected to "liquidated damages of $15,000 or actual damages, whichever is greater." 410 ILCS 513/40(a)(2). United argues that Plaintiffs have not plausibly alleged a claim for any "intentional or reckless" violations of GIPA.

Because no GIPA cases address this issue, both parties rely on cases in the BIPA context. BIPA's damages provision is nearly identical to GIPA's. *Compare* 740 ILCS 14/20, *with* 410 ILCS 513/40. The development of the BIPA case law on pleading mental state was unclear. On one hand, courts held that "intentional or reckless" was an element of a BIPA claim that had to be pleaded with sufficient detail. *See, e.g.*, *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612,

12

618 (N.D. Ill. 2019) (Aspen, J.); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (Coleman, J.); *see also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible.") (citation omitted). On the other hand, courts (often the same ones), held that "intentional or reckless" claims were not really "claims" at all, but "demands for relief" for which a plaintiff "need not plead facts … that show his entitlement." *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 874 (N.D. Ill. 2022) (Aspen, J.); *see also Mahmood*, 2022 WL 3684636, at *3.

In *Sosa*, the court addressed these contrary conclusions and was "convinced [based on several recently issued decisions] that [its later] conclusion [was] the correct one." *Id.* at 874 n.7. The court reasoned that "requests for liquidated damages [under BIPA] are requests for a particular type of remedy should [a plaintiff] prevail on his underlying BIPA claim." *Id.* at 874 (citations omitted). In other words, BIPA's remedies are distinct from the underlying claims that a defendant violated one of BIPA's provisions. *Id.* The court held that Rule 8 does not require plaintiffs to plead facts showing their entitlement to precise forms of available relief. *Id.* (collecting cases).

This Court agreed with *Sosa's* reasoning in *Mahmood*, 2022 WL 3684636, at *3. And the Court finds that the relevant provisions of GIPA require the same conclusion in this case. Plaintiffs allege that United violated GIPA Section 25(c)(1), which does not limit actionable claims to "intentional or reckless" ones. *See* 410 ILCS 513/25. Instead, Plaintiffs "may recover" heightened damages if they are the "prevailing party" and if the defendant "intentionally or recklessly violate[d]" GIPA. 410 ILCS 513/40. As with BIPA, "[a] request for enhanced damages is a demand for relief, not part of a [GIPA] claim, therefore, [Plaintiffs] need not allege facts to show [they are] entitled to this enhanced relief." *Mahmood*, 2022 WL 3684636, at *3. The Court denies this aspect of United's motion to dismiss.

**CONCLUSION**

For these reasons, the Court denies United's Motion to Dismiss [27].

**IT IS SO ORDERED.**

Date: 7/16/2024

Entered:

SHARON JOHNSON COLEMAN
United States District Judge