**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GINNIE MCKNIGHT, JACQUELINE GARRISON, and ADRIANA DE LEÓN, individually and on behalf of all similarly situated individuals, | ) ) ) ) ) | |
| | ) | Case No. 1:23-cv-16118 |
| *Plaintiffs*, | ) ) | Hon. Georgia N. Alexakis |
| v. | ) ) | Mag. Hon. Jeffrey T. Gilbert |
| UNITED AIRLINES, INC., a Delaware corporation, and UNITED AIRLINES HOLDINGS, INC., a Delaware corporation, | ) ) ) ) | |
| *Defendants*. | ) ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXTENSION OF DISCOVERY AND DEFENDANTS' MOTION TO STAY CLASS DISCOVERY**

Defendants United Airlines, Inc. and United Airlines Holdings, Inc. (jointly, "United"), by and through their attorneys, respectfully request that this Court deny Plaintiffs' Opposed Motion to Extend Fact Discovery Deadline (ECF No. 75), and instead grant Defendants' Motion to Stay Class Discovery and set a briefing schedule on United's Motion for Summary Judgment.[1] The Parties conferred pursuant to Local Rule 37.2, were not able to agree, and require the Court's intervention for resolution.

## I.    Eight Months of Party and Non-Party Discovery Are Sufficient.

As of the filing of this Opposition and Motion, the Parties have completed over eight months of discovery resulting in the removal of two out of three Plaintiffs and one fledgling allegation for Plaintiff Garrison. On November 14, 2024, this Court set the discovery schedule, setting the close of fact discovery for July 25, 2025. (ECF No. 52.) By November 29, 2024, the

---

[1] Plaintiffs' counsel has indicated that they intend to file their own cross motion for summary judgment.

Parties served and answered written discovery, including the production of written documents, and Rule 26(a)(1) initial disclosures were exchanged (*see* ECF No. 55), and timely supplemented thereafter. Plaintiffs also issued written third-party discovery requests to IPCS (also known as "DataFit"), Quest Diagnostics, NovaCare, and Concentra.

On February 18, 2025, Plaintiffs' counsel informed Defense counsel that they would be withdrawing Vanessa De León as Plaintiff-Class Representative. On January 31, 2025, Plaintiff Garrison's deposition was completed. On February 18, 2025, Plaintiffs issued a second set of discovery requests, which was responded to by Defendants on March 27, 2025, and timely supplemented thereafter.

On April 23, 2025, this Court granted Defendants' Motion to Compel Plaintiff McKnight's in-person deposition testimony. (ECF No. 71.) On May 30, 2025, Plaintiffs' counsel indicated that they would be withdrawing Plaintiff McKnight as Plaintiff-Class Representative in this matter. (ECF No. 74.)

On July 2, 2025, Plaintiffs deposed a third-party medical services provider, DataFit, regarding its administration of the post-offer strength tests at issue. On July 17, 2025, Plaintiffs completed the 30(b)(6) deposition of Defendants' designee, Terry Werber. Overall, during eight months of discovery and protracted discovery motion practice, the Parties exchanged written discovery, completed party and non-party depositions, issued written discovery to third parties, and Plaintiffs' counsel removed two out of three Class Representatives in this matter.

On July 22, 2025, just three days before the close of the eight-month discovery period, without any prior discussion or notice, Plaintiffs' counsel noticed the depositions of three additional United employees, and demanded the production of putative class member information. In their email, Plaintiffs' Counsel stated: "Completion of the above items will necessarily require

the continuation of the discovery deadline by 2 months." (Pl. Ex. 1, ECF 75-2.) The Parties conferred by e-mail on July 24, 2025. United indicated that it opposed the extension of discovery, and intended to file this Motion to Stay Class Discovery and Brief Summary Judgment, asking for Plaintiffs' position on that motion. (*Id.*) After counsel filed their motion for extension of discovery the evening before, Plaintiffs' counsel responded that they did not agree on July 25, 2025. (*see* ECF No. 75.)

## II.      A Discovery Stay Pending Summary Judgement Briefing and Outcome Is The Procedurally Appropriate, Economical, and Judicious Next Step.

United respectfully requests that this Court deny Plaintiffs' motion for untimely discovery, stay any class discovery, and set a briefing schedule for United's motion for summary judgment as to all of Plaintiff Garrison's remaining claims. "The court enjoys broad discretion in controlling discovery and the court's determination of whether to stay discovery is case specific." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 336 (N.D. Ill. 2005). "Stays of discovery are appropriate where, among other things . . . ongoing discovery is unlikely to produce [outcome-determinative] facts." *Simstad v. Scheub*, No. 2:07 CV 407, 2008 WL 1914268, at *1 (N.D. Ind. Apr. 29, 2008). When the parties may narrow or dispense of the plaintiffs' claims through dispositive motion practice, a stay of discovery is warranted. *See Braun v. City of McHenry*, No. 21 C 50003, 2021 WL 12332322, at *2 (N.D. Ill. Apr. 8, 2021). Further, a stay of discovery pending summary judgment briefing is in the interest of economic and efficient case management, as "[p]retrial discovery is time consuming and expensive." *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 891 (7th Cir. 2018). Here, good cause exists to deny Plaintiffs' motion for extension of discovery, and grant United's motion to stay class discovery pending the briefing and outcome of United's motion for summary judgment. Plaintiffs had ample opportunity

to seek relevant and dispositive information from Parties and non-parties to this matter, and should not be permitted to expand discovery without any demonstrable need or value.

### A. Plaintiff Garrison's Single Allegation of a Verbal, Unrecorded Inquiry Regarding Family Medical History Cannot Plausibly Support Class Certification.

As United will demonstrate in its Motion for Summary Judgment, class discovery should be stayed because there are no grounds upon which a class can or will be certified here. As an initial point, Plaintiff Garrison acknowledges that United did not ask for any family medical history or genetic information in her online application:

> Q.  Okay. So you can take your time and look through this, but I do not see any questions in this application that refer to family medical history or any other kind of genetic information. So do you agree with me that they did not – United did not ask you for any family medical history or genetic information in your online application?
>
> A.  Is this the assessment that –
>
> Q.  No, this is just your online application. So we talked about before that this is purely an online interaction with United.
>
> A.  Okay, yeah, this is different. I don't see anything like that in this online application, no.
>
> Q.  Okay so you agree with me that there's no questions about family medical history or any other genetic information in your application with United?
>
> A.  Yeah, not in the application.

(*See* **Exhibit A,** Excerpts of Plaintiff's Deposition; Plaintiff Garrison's Dep. at 78:20-79:12.) Plaintiff Garrison further admits that during the online interview with United, she was also not asked anything related to genetic information:

> Q.  Okay. What were you asked about during your interview?
>
> A.  Basic interview questions.
>
> Q.  Okay. Anything – did they ask you during this interview anything about your family medical history?
>
> A.  No.

Q.  Anything about any other genetic information?

A.  No.

(*Id*. at 86:1-9.) And then with respect to post offer examination, Plaintiff Garrison also admits that the forms do not contain any questions that solicit genetic information, much less as a condition of employment:

Q.  So looking at Exhibit 5, this is titled U.S. Mobile Health Exams, and it says employee vision test. Is this the paperwork that they gave you in connection with doing your vision test?

A.  Yes.

Q.  Okay. And as I'm going through the questions and looking through them, there's nothing in this vision test questionnaire that asks you for family medical history or any other kind of genetic information, is that right?

A.  Okay. On the vision test –

Q.  Yes.

A.  I don't see anything on here.

Q.  Okay. So there's nothing on that written form that asks you about family medical history or any other genetic information, is that right?

A.  Not on that written form, no, not on this vision – not on this employee vision test questionnaire.

(*Id*. at 97:5-23.) Plaintiff also confirms that she was not asked about family medical history or about any other genetic information during her hearing test:

Q.  Okay. So in connection with your hearing test did anyone else ask you for family medical history or any other genetic information?

A.  In connection with the hearing test?

Q.  Correct.

A.  Not to my knowledge.

Q.  Is that a no? I mean, you would remember?

A.  Yeah, I would remember if somebody asked me that.

(*Id*. at 102:24-103:8.) Finally, Plaintiff Garrison also confirms that the paperwork related to her isokinetic evaluation also did not seek information regarding family medical history or genetic information:

> Q.  Okay. So, and feel free to go through and look through this paperwork, there are no questions in this paperwork that I'm looking at that ask you any questions for family medical history or any other genetic information. Would you agree with me that that is accurate? And feel free to look through it.
>
> A.  I don't see anything on this paperwork, no.
>
> Q.  So you agree with me that this paperwork did not ask you for family medical history?
>
> A.  Not on this paperwork it did not. I don't see anything on this paperwork, no.

(*Id*. at 104:20-105:6.)

What remains is the in-person isokinetic evaluation. There, Plaintiff Garrison testified at her deposition that immediately before undergoing a strength test administered by third party contractor IPCS,[2] she was informed of her brother's death in a telephone call. (*Id*. at 107:8-18). Subsequently, in the questioning Plaintiff Garrison underwent in preparation for the strength test, Garrison testified that she was asked for her family medical history verbally:

> Q   So I need to know as best you can recall the exact wording of that question. What I'm hearing from you is that you were asked if you have a history of hypertension or heart disease. So what do you recall specifically as being asked? And if you don't recall the specific words, then I want you to tell me that.
>
> A   Okay. Like said, she was preparing me pretty much to be able to perform the strength test. So she was asking me, you know, about my heart, if there was any -- if I had any history or any conditions with my heart, did I have any history of any high blood pressure or hypertension or diabetes or anything like that. So then she asked me, after I said no, she asked me you sure, what about your family, does anybody in your family that has any history of any high blood pressure or any heart disease or any diabetes.
>
> Q   Okay. And what did you say?
>
> A   First I didn't say anything, and then I said that I wasn't sure.

---

[2] No United personnel were present for the strength testing performed by third party IPCS n/k/a DataFit.

Q    Okay. So you said you weren't sure. Anything else that you told them?

A    No.

(*Id*. at 111:2-22). Beyond that, Plaintiff conceded there was nothing further that she could recollect regarding any purported solicitation of genetic information:

Q.   Okay. Anything about -- anything else about testing with your application for these jobs with United that we haven't already talked about today?

A    No, not to my recollection.

(*Id*. at 113:16-19.) And with respect to the strength test that Plaintiff Garrison underwent, she testified that it was the death of her brother that impacted her ability to pass the test, nothing more:

A    Yes, and maybe I looked, you know, a little bit, you know, like I probably wouldn't be able to perform the test because of what my condition may have been at the time of hearing of bad news, but, you know, she kept saying that, you know, you sure.

(*Id*. at 117:10-14).

Q.   So when you say that you were - - that your mental state could have impacted the strength test, what do you -- what do you – how would you describe how you looked during that meeting with –

A.   I mean, I came in, you know, attire wise appropriate, dressed appropriate. And, you know, who can tell how a person is looking after they've heard devastating news in their face? Because I look at you, and I see that you heard – just heard some bad news, I would say I could probably tell there's something wrong, you know, inside or whatever, emotionally or something, you know. So I may have had, but I don't know if I had been crying or whatever, but, you know, I know that that may have – you know, why I felt like she kept, are you sure you going to – you sure, you know, so yeah.

(*Id*. at 120:16-121:7.)

Plaintiff was permitted to take the strength test after the questioning ended, but failed it, which she learned in an email after she had left the site. Accordingly, Garrison was not eligible to continue in the application process for the United Ramp position.

"What about your family" is the sole allegation that *any* United applicant was ever asked any question regarding family medical history. The alleged question, if in fact posed to Plaintiff

Garrison by a DataFit employee, could have plausibly (and inadvertently) been driven by Plaintiff's unique and unfortunate circumstances of learning of her brother's death just minutes earlier. Plaintiff Garrison agrees that she was not asked for family medical history at any other time during her onboarding process, and that no questionnaire or document requested that she provide family medical history or any other "genetic information."

Plaintiff Garrison's allegation simply will not support class certification. Each member of the putative class will have to be asked whether they, too, were asked a unique verbal question based on their appearance before taking the strength test, administered by a third-party no less. This hyper-individualized inquiry regarding unlikely circumstances across applicants does not support a certifiable class action. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("What matters to class certification… is not the raising of common questions—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. The plaintiffs' 'common contention' thus must be capable of class-wide resolution, so that its 'truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"); *see also McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 801 (7th Cir. 2017) (affirming order denying class certification where despite the existence of "one possible common question," "resolving the proposed class members' claims doesn't center on any question common to the class, but instead turns entirely on facts specific to each individual class member's claim").

### B. Staying Discovery Pending Summary Judgement Briefing Promotes Judicial Economy and Efficiency, Particularly As Plaintiff Garrison's Allegations Cannot Support a Certifiable Class.

In cases where discovery does not plausibly support class certification, summary judgement briefing is the appropriate next step. *See Hakim v. Accenture U.S. Pension Plan*, 735 F. Supp. 2d 939, 956 ("Here, in light of Defendants' arguments casting doubt on the merits of the

named plaintiff's claims, the Court determined that it was in the interest of judicial economy to decide Defendants' motion for summary judgment before addressing the question of class certification"); *Trull v. Lason Systems, Inc.*, 982 F. Supp. 600, 604-05 (N.D. Ill. 1997) (finding that requiring "notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake . . . [and] deciding summary judgment before class certification is the appropriate procedure in this case"), *quoting Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir. 1984); *Larson v. Evanston Nw. Healthcare Corp.*, No. 98 C 0005, 1999 WL 518901, at *1 (N.D.Ill. July 19, 1999) (limiting discovery in a class action matter is appropriate when "when there is sufficient doubt regarding the likelihood of success on the merits of a plaintiff's claims"); *see also* Fed. R. Civ. P. 23 Notes of Advisory Committee on 2003 Amendments ("[t]he party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified.")

Even if Plaintiffs maintained a plausible request for class certification, which they do not, summary judgement briefing remains the appropriate, economical, and expedient avenue of resolution after eight months of discovery. Indeed, a discovery stay is appropriate in order to conserve the resources of the Parties and the Court -- in particular to avoid incurring discovery expenses (and potential motion practice) that may be mooted once the Court rules on any dispositive summary judgment briefing. *See Cowen v. Bank United of Texas*, FSB, 70 F.3d 937, 941 (7th Cir. 1995) ("[c]lass actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action"); *Garner v. Lakeside Cmty. Comm.*, No. 10-CV-174, 2010 WL 3034769 (N.D. Ill. Aug. 3, 2010) (recognizing the waste of "delving into ten issues when one will be dispositive" and exercising the court's

"authority to limit discovery" provided efficient alternative means of resolution); *Crawford-El v. Britton*, 523 U.S. 574, 599, 118 S. Ct. 1584, 1597, 140 L. Ed. 2d 759 (1998) (holding that the Court can prevent undue burden, expense, and time through control of discovery); *Myers v. Equifax Services, LLC,* 2022 WL 18674883, at *2 (S.D. Ind. June 7, 2022) (rejecting plaintiffs' motion to defer summary judgment briefing pending class certification); *Gunn v. NPC Int'l, Inc.*, No. 113CV01035JDBEGB, 2016 WL 11478277, at *3 (W.D. Tenn. 2016) (denying discovery before conditional class certification reasoning that the plaintiff could meet their burden of persuasion in the absence of "voluminous individualized discovery"); *Williams v. WinCo Foods et al*, No. CV 13-00146 CRB, at *2-3 (N.D. Cal. 2013) (denying the plaintiffs' request for pre-certification discovery, reasoning that the pleadings and appended affidavits were sufficient for the early stages of litigation); *Dailey v. Sears, Roebuck & Co.*, 214 Cal. App. 4th 974, 1004-1005 (2013) (affirming trial court order denying class-wide discovery prior to decision on class certification; "[T]he law requires not that the parties be able to conduct a comprehensive investigation, but rather, only that they have 'a chance to conduct reasonable investigation' in advance of the class certification determination"); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (finding the court has discretion to deny plaintiff's attempt to obtain discovery in support for his effort to certify a class).

## III. Conclusion

For these reasons, Defendants United Airlines, Inc. and United Airlines Holdings, Inc. respectfully request that the Court deny Plaintiffs' Opposed Motion to Extend Discovery, and grant Defendants' Motion to Stay Discovery and set a Summary Judgment Briefing schedule.

**DATED: July 25, 2025**

Respectfully submitted,

United Airlines, Inc. and
United Airlines Holdings, Inc.


By:  */s/ Ada W. Dolph*
      One of Their Attorneys

Ada W. Dolph
adolph@seyfarth.com
Paul Yovanic, Jr.
PYovanic@seyfarth.com
Ala Salameh
asalameh@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:     (312) 460-5000
Facsimile:     (312) 460-7000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on July 25, 2025, she caused the foregoing to be filled with the Clerk of the Court via the Court's electronic case filing/ECF system, and has served a true and correct copy of the same upon all counsel of record.

<u>/s/ *Ada W. Dolph*</u>

Ada W. Dolph